**Robert M. BLANKENSHIP, M.D., Appellants,**

**and**

**Caritas Health Services, Inc., d/b/a Caritas Medical Center**

**v.**

**Horace COLLIER, Appellee.**

Nos. 2007–SC–000916–DG, 2007–SC–000921–DG.

Supreme Court of Kentucky.

Jan. 21, 2010.

David Bryan Gazak, James Eric Smith, Darby & Gazak, PSC, Louisville, KY, for appellant, Robert M. Blankenship, M.D.

David R. Monohan, Elizabeth U. Mendel, Rebecca Lynn Didat, Woodward, Hobson & Fulton, LLP, Louisville, KY, for appellant, Caritas Health Services, Inc., d/b/a Caritas Medical Center.

Karl Price, Law Offices of Karl Price, Louisville, KY, for appellee.

Opinion of the Court by Justice ABRAMSON.

The central question in this medical malpractice case is whether and when a trial court may grant summary judgment against a plaintiff who has failed to identify any expert witnesses. Pursuant to Kentucky law, in most medical malpractice cases, a plaintiff is required to put forth expert medical testimony to establish the applicable standard of care, any breach that occurred and any resulting injury to the plaintiff. This case being a typical medical malpractice case, Horace Collier, the plaintiff, never disputed that an expert was necessary to prove that Dr. Robert Blankenship and Caritas Health Services

were negligent in the diagnosis and treatment of his appendicitis. Despite his repeated representations to the trial court that he would be using expert testimony and his request for an extension for more time to locate and identify an expert, Collier still had failed to provide the names of any expert witnesses more than one year following the filing of the complaint. Because under Kentucky substantive law Collier would be unable to sustain his burden of proof without expert testimony, the trial court granted Dr. Blankenship's and Caritas's motions for summary judgment. After the Court of Appeals reversed the trial court's grant of summary judgment, this Court granted discretionary review.

According to CR 56.02, a defendant "may, at any time, move with or without supporting affidavits for a summary judgment in his favor. . . ." Although a defendant is permitted to move for a summary judgment at any time, this Court has cautioned trial courts not to take up these motions prematurely and to consider summary judgment motions "only after the opposing party has been given ample opportunity to complete discovery." *Pendleton Bros. Vending, Inc. v. Commonwealth Finance and Admin. Cabinet,* 758 S.W.2d 24, 29 (Ky.1988). Thus, even though an appellate court always reviews the substance of a trial court's summary judgment ruling *de novo, i.e.,* to determine whether the record reflects a genuine issue of material fact, a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling. In a medical malpractice action, where a sufficient amount of time has expired and the plaintiff has still "failed to introduce evidence sufficient to establish the respective applicable standard of care," then the defendants are entitled to summary judg-

ment as a matter of law. *Green v. Owensboro Medical Health System, Inc.,* 231 S.W.3d 781, 784 (Ky.App.2007); *See also Neal v. Welker,* 426 S.W.2d 476, 479–480 (Ky.1968). The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion.

In this case, the issue before this Court is not simply whether Collier had failed to establish a genuine issue of material fact at the time Dr. Blankenship and Caritas filed their summary judgment motions—without a doubt, there is no genuine issue of material fact in the record because Collier has no expert to support his claim of medical negligence. Rather, the more specific issue is whether the trial court was correct to take up the defendants' summary judgment motions and enter a ruling when it did and, secondarily, whether the court was required first either to enter a separate order requiring Collier to obtain expert testimony or to enter an order sanctioning Collier for failing to meet the court's expert disclosure deadline.

Having carefully reviewed the record, we conclude that the defendants' summary judgment motions were properly before the trial court and it did not abuse its discretion in taking them up and deciding to rule on the motions approximately four months after they were filed and seventeen months after the lawsuit was initiated. Collier had completely failed to identify any expert witnesses and could not sustain his burden of proof without expert testimony and, thus, no material issue of fact existed in the record and the defendants were entitled to summary judgment as a matter of law. Because Collier never disputed that a medical expert was necessary to prove his claim of medical negligence and continually represented to the trial court that he would obtain an

expert witness, no separate ruling stating the obvious—the need for an expert witness—was required before the court ruled on the defendants' summary judgment motions. Further, because CR 56 operates independently of the discovery rules (and specifically CR 37.02), the trial court was not required to enter a sanctions order prior to granting the defendants' summary judgment motions. Thus, the Court of Appeals opinion is reversed, and the Jefferson Circuit Court's summary judgments granted to Dr. Blankenship and Caritas are reinstated.

### RELEVANT FACTS

On February 17, 2004, Collier was admitted to Caritas Medical Center in Louisville, Kentucky, after suffering from abdominal pain. The following day, after undergoing tests and being diagnosed by Dr. Blankenship as having appendicitis, Collier had an appendectomy. Subsequently, on February 23, 2004, Collier was released from Caritas and returned home. Approximately one year later, on February 17, 2005, Collier filed suit against Dr. Blankenship and Caritas in Jefferson Circuit Court, alleging that both parties were negligent in their failure to re-evaluate and treat Collier in a timely manner. Specifically, Collier contended that he had been ignored for several hours while awaiting treatment, during which he suffered from severe abdominal pain, and further that the x-ray of his abdomen had not been stored properly, contributing to the delay in his diagnosis and treatment. In his complaint, Collier alleged that as a result of Dr. Blankenship's and Caritas's medical negligence, he sustained permanent physical and mental injuries, prolonged pain and mental anguish, impairment of his power to labor and earn money and significant medical expenses.

After Dr. Blankenship and Caritas filed their answers denying Collier's allegations, the parties began pre-trial discovery. More than nine months after Collier filed his complaint, on November 30, 2005, the trial court entered a Civil Jury Trial Order, which required Collier to disclose his expert witnesses by January 30, 2006, and scheduled the case for jury trial on October 10, 2006. On February 2, 2006, two days after the expert disclosure deadline, Collier filed a motion with the court requesting a thirty-day extension. In his motion, Collier stated that he was moving "the Court for an extension of time to identify and disclose the expert witness(es) who will offer expert opinion(s) at the trial of this matter." Without an objection from the defendants, the trial court granted Collier's request and extended the plaintiff's expert disclosure deadline to February 28, 2006.

On March 14, 2006, after Collier had still failed to disclose any experts, Dr. Blankenship and Caritas filed motions for summary judgment, each arguing that there could be no issue of material fact in this medical malpractice case without expert testimony. In his response to the defendants' motions, Collier contended that summary judgment was inappropriate in this instance because it was only being used as a sanctioning tool to punish him for failing to timely disclose his experts and because there was a "serious question" as to whether Collier would even need experts to prove his medical malpractice case. On July 7, 2006, nearly four months after the defendants moved for summary judgment, the trial court entered its order granting the defendants' motions. Although the trial court recognized that an expert was not required in all medical malpractice cases, it stated that "[i]n this case, however, a layperson would not be able to discern (without specialized knowledge that an expert in that field possessed)

whether Dr. Blankenship's delay in treatment, if any, caused Plaintiff permanent physical and mental injuries." Concluding that without any expert witnesses, Collier would be unable to prove causation in his medical malpractice case, the trial court held that the defendants were entitled to summary judgment as a matter of law.

Collier appealed the trial court's grant of summary judgment to the Kentucky Court of Appeals. Relying primarily on *Baptist Healthcare Systems, Inc. v. Miller,* 177 S.W.3d 676 (Ky.2005), the Court of Appeals reversed. The Court of Appeals explained that *Baptist Healthcare* outlines a procedure to be used when trial courts are deciding summary judgment motions in medical malpractice cases and that the trial court did not follow that procedure in this case. Applying *Baptist Healthcare, supra,* the Court of Appeals held that before granting summary judgment in a medical malpractice case based on a plaintiff's failure to identify an expert, a trial court should first make a separate ruling determining whether an expert is actually needed in the case. If the court decides that an expert is needed, the court should then give the plaintiff a reasonable amount of time to identify and disclose an expert witness. Concluding that the trial court's grant of summary judgment was improper in this case, the Court of Appeals vacated the order and remanded the case to Jefferson Circuit Court. As noted, this Court then granted discretionary review to consider when it is appropriate for trial courts to grant summary judgment in medical malpractice cases based on a plaintiff's failure to disclose expert witnesses.

### ANALYSIS

■ Dr. Blankenship and Caritas contend that the Court of Appeals erred in applying cases that involved a legitimate dispute about the need for expert witnesses because, in this case, Collier never disputed that expert medical testimony was required. In response, Collier contends that *Baptist Healthcare, supra, Ward v. Housman,* 809 S.W.2d 717 (Ky. App.1991), and *Poe v. Rice,* 706 S.W.2d 5 (Ky.App.1986), are on-point with the facts of this case and mandate a reversal of the trial court's grant of summary judgment. However, each of these cases cited by Collier differs from the facts of this case and none addresses the common scenario presented here.

### I. The Procedure Outlined in *Baptist Healthcare* Does Not Apply Because Collier Never Legitimately Disputed the Need for a Medical Expert and Because Collier's Claim Could Not Be Presented Without An Expert.

■ Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care. *Perkins v. Hausladen,* 828 S.W.2d 652, 655–56 (Ky.1992). Expert testimony is not required, however, in *res ipsa loquitur* cases, where "the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it", and in cases where the defendant physician makes certain admissions that make his negligence apparent. *Id. (quoting Restatement (Second) of Torts,* Comment b, p. 157). Medical malpractice cases can therefore be divided into two categories: cases where the parties do not dispute the need for expert testimony, which encompass the vast majority of medical malpractice claims, and cases where the plaintiff disputes the need for expert testimony because he contends one of the narrow exceptions applies. *Baptist Healthcare Systems, Inc. v. Miller, supra,* falls into the latter, somewhat rare, category while Collier's case fits into the

former, much more common, category wherein expert testimony is essential.

In *Baptist Healthcare,* 177 S.W.3d at 678, the plaintiff, Ms. Miller, experienced nerve damage after the hospital's phlebotomist[1] left a tourniquet on her arm for over ten minutes while she was having blood drawn at Central Baptist Hospital. Ms. Miller subsequently brought an ordinary negligence claim against the hospital. Prior to trial, Baptist Healthcare moved for summary judgment, arguing that Ms. Miller's case was actually a medical malpractice claim and not an ordinary negligence claim, and that her lack of expert testimony meant that Ms. Miller could not prove either the applicable medical standard of care or a breach of that standard. Although Ms. Miller responded that the hospital's phlebotomist breached his own employer's standard of care as set forth in a training manual and that a medical expert was not needed, the trial court disagreed. The court held that medical standard of care testimony was necessary, denied the hospital's summary judgment motion, and gave Ms. Miller a thirty-day continuance to identify an expert. *Id.* Ms. Miller secured an expert and the case was tried, resulting in a verdict for the plaintiff.

On the hospital's appeal, the Court of Appeals and ultimately this Court concluded that the trial court did not abuse its discretion. This Court first held that because the standard of care in drawing blood "is not within the scope of common experience of jurors, requiring expert testimony as to the standard of care of a phlebotomist was a proper exercise of trial court discretion." *Id.* at 680–681. Second, this Court concluded that the trial court did not err in denying Baptist Healthcare's motion for summary judgment even

though at the time the motion was made, the record reflected that Ms. Miller had no expert witness to establish the medical standard of care. *Id.* at 681–682.

This Court based its ruling on the fact that up until the trial court required her to do otherwise, Ms. Miller had planned on proceeding to trial without expert testimony. *Id.* In other words, Ms. Miller had from the outset of her case legitimately disputed the need for expert testimony. Commenting on this strategy, this Court stated that because phlebotomy is an "unlicensed" field of practice in Kentucky it "was not unreasonable for Ms. Miller to contend that no expert witness was necessary to determine that her injuries were caused by leaving the tourniquet [on] her ... arm too long or that the principle of *res ipsa loquitur* applied to the case." *Id.* at 681. Because Ms. Miller had disputed the need for expert testimony in her case and had a reasonable basis to do so, this Court held that the trial court proceeded correctly by first making a separate ruling on the necessity of an expert witness and then giving Ms. Miller a reasonable amount of time to identify an expert before ruling on Baptist Healthcare's summary judgment motion. *Id.*

The *Baptist Healthcare* Court reiterated it would have been clearly inappropriate for the trial court to grant summary judgment because at the time the defendant filed its motion, the trial court had not even resolved the "dispute as to the need for an expert." *Id.* In cases where there is a real dispute regarding the need for expert testimony, imposing sanctions on the plaintiff for failing to comply with a scheduling order requiring disclosure of the expert's name and testimony is a more appropriate remedy than a summary judg-

---

1. A phlebotomist is a person who is trained in withdrawing blood from a person's vein through an incision or a needle puncture. *Stedman's Medical Dictionary* (27th ed. 2000).

ment. *Id.* at 681–682. We have recited this Court's analysis in *Baptist Healthcare, supra,* to emphasize the essential fact on which its holding was based—a reasonable, legitimate dispute about the necessity for expert testimony given the facts of that case. Because there was no such dispute in Collier's case, the procedure followed in *Baptist Healthcare, supra,* is simply not applicable.

Collier, unlike the plaintiff in *Baptist Healthcare,* never created a legitimate dispute about the need for expert testimony. On the contrary, he made affirmative representations to the trial court that he would be using expert witnesses, but that those witnesses had not yet been secured. For example, in his response to Dr. Blankenship's requests for admissions, Collier stated that the "expert witness(es) who will testify has/have not been determined." In addition, Collier filed the aforementioned written motion with the trial court requesting "an extension of time to identify and disclose the expert witness(es) who will offer expert opinion(s) at the trial of this matter." Only when Collier was facing a summary judgment motion for not identifying any experts did he argue for the first time that he could meet his burden of proof without expert testimony. Collier's belated response, when considered in the context of the medical malpractice claims he stated in his complaint, simply did not create a legitimate dispute about the need for expert testimony.

In addition, unlike the plaintiff in *Baptist Healthcare,* supra, Collier did not have a reasonable basis on which to dispute the need for medical experts in his case. Having reviewed the negligence allegations, the trial court found that Collier could not succeed on his medical malpractice claim without expert testimony. The record supports this conclusion. In his complaint, Collier alleged that Dr. Blankenship and Caritas were negligent in their failure to reevaluate and treat him in a timely manner. As to each defendant, Collier specifically stated that the defendant deviated "from *acceptable standards of medical care* and said deviations constitute medical negligence." Complaint ¶¶ 9, 11. (emphasis supplied). Before this Court, Collier claimed that "it does not take an expert to offer an opinion that as a medical doctor Appellant–Blankenship had deviated from the standard of care for being a (sic) lazy and angry because he did not want to be on call" and treat patients. Assuming Collier could have offered evidence that Dr. Blankenship was lazy and angry, such lay testimony would in no way establish the medical standard of care as to a patient presenting with symptoms of appendicitis and whether Dr. Blankenship breached it. In the trial court, in his response to the defendants' summary judgment motions, Collier also argued that an expert was not needed in this case because a breach of the medical standard of care occurred when his abdominal x-ray was left unattended instead of being scanned promptly into a computer database. However, even this allegation of negligence would have required a medical expert to testify regarding the standard of care for handling, storing, and reading x-rays; any breach that may have occurred here; and how such breach caused injury to Collier. Simply put, Collier failed to timely dispute the need for expert testimony and because Collier did not have a reasonable basis to do so, the trial court did not abuse its discretion in deciding to rule on the summary judgment motion without first entering an order declaring that experts were necessary.

■ In order to give guidance to the bench and bar regarding this recurring issue, we reiterate that where a plaintiff does create a legitimate dispute about the

need for an expert witness prior to the expiration of the court's expert disclosure deadline, the trial court should first make a separate ruling on that issue, *i.e.*, the need, or lack of need, for expert testimony in the case. If the court determines within its discretion that an expert is needed, it should give the plaintiff a reasonable amount of time to identify an expert as outlined by this Court in *Baptist Healthcare, supra*. However, if the need for an expert is never disputed and if it would be unreasonable for the plaintiff to argue that an expert is not needed, (and most particularly if the plaintiff requests an extension for the express purpose of securing more time to identify his experts), there is no reason for a trial court first to enter a separate ruling informing the plaintiff that his case requires expert testimony before considering a defendant's summary judgment motion based on the plaintiff's failure of proof. Here, Collier never suggested to the trial court that he could prove medical negligence without expert witnesses until he responded to the defendant's motions for summary judgment filed some thirteen months following the filing of the complaint. Because Collier failed to identify any expert witnesses, never seriously disputed that an expert would be needed and had asserted medical malpractice claims which clearly required expert testimony, the summary judgment motions were properly before the trial court for ruling and the trial court correctly found there was no genuine issue of material fact precluding summary judgment.

## II. *Ward v. Housman* and *Poe v. Rice* Are Factually Distinguishable From Collier's Case and the Trial Court Was Not Required First to Enter a Sanctions Order Pursuant to CR 37.02.

Collier argues that the cases of *Ward v. Housman, supra, Poe v. Rice, supra,* both of which involve the Kentucky Court of Appeals reversing a trial court's grant of summary judgment in a medical malpractice case, also mandate a reversal of the trial court's grant of summary judgment in this case. Although those cases are not binding on this Court, each is distinguishable from the present case and neither is inconsistent with the procedure we have outlined.

*Ward v. Housman, supra,* involved a plaintiff who did not disclose an expert until nine months after the deadline in the trial court's scheduling order had passed. After Kelly Ward and her husband brought a typical medical malpractice action against her doctor, the trial court entered a scheduling order, setting the trial date for September 5, 1989, and requiring the Wards to disclose expert witnesses by October 31, 1988. 809 S.W.2d at 718. Nine months passed after the disclosure deadline without any pertinent motions filed by the plaintiffs or defendant and then on July 24, 1989, the Wards filed supplemental answers to the defendant's interrogatories, finally naming an expert witness. *Id.* In response, the defendant filed a motion to exclude the Wards' expert witness because the disclosure had occurred well-after the deadline, and, in the alternative, he asked for a continuance because the witness was "a surprise" expert. The trial court granted the defendant's motion to exclude the Wards' expert, ruling that the plaintiffs were not allowed to have any witnesses at trial who were not known to the defendant by the October 31, 1988 disclosure deadline. *Id.* Although the Wards argued in a motion for reconsideration that they would not be able to sustain their burden at trial without the expert, the trial court denied reconsideration and subsequently, on September 6, 1989, entered summary judgment against the Wards. Significantly, the defendant had *never* moved for summary judgment thus

presenting for consideration the Kentucky Rule of Civil Procedure 56.03 issues of absence of material fact and entitlement to judgment as a matter of law. As the Court of Appeals bluntly put it "[t]he result [the defendant] got was more than what he asked for." *Id.* at 719.

In concluding that the trial court improperly granted summary judgment, the *Ward* Court held that the trial court did not dismiss the case because it lacked a genuine issue of material fact, but rather, because the Wards had not complied with a scheduling order. The Court of Appeals distinguished the Wards' case from one in which the plaintiff never discloses an expert, noting that "the case at hand was not one where the dismissed party had no expert but [instead] was [one where the dismissed party was] prevented from using the expert's testimony as a sanctioning technique for the dilatory conduct of the Wards' counsel." *Id.* To reiterate, Ward, supra, held that summary judgment is not appropriate when entered *sua sponte* as a sanction because expert witnesses have been identified in an untimely manner. *Id.* Notably, even though the disclosure deadline had long since expired, the Wards actually identified an expert witness before the defendant raised the absence of proof issue *via* a summary judgment motion.

■ Here, Collier never attempted to identify or disclose any expert witnesses. When the trial court granted summary judgment against Collier on July 7, 2006, seventeen months had passed since Collier had filed his complaint, more than four months had passed since the extended disclosure deadline, and approximately four months had passed since the filing of the defendants' summary judgment motions.[2] During all this time, Collier never created

a genuine issue of material fact regarding Dr. Blankenship's negligence by identifying a medical expert who could testify about a breach of the standard of care. Thus, when the trial court granted summary judgment against Collier, it was not simply sanctioning Collier for failing to meet a deadline, but rather correctly applying the legal standard in medical malpractice cases regarding the expert testimony necessary to meet Collier's burden of proof. When it is evident that the plaintiff has not secured a single expert witness and has failed to make any expert disclosures after a reasonable period of time, there truly is a failure of proof and a summary judgment motion is appropriate.

*Poe v. Rice* is also distinguishable from the case at hand. After Ms. Poe initiated a medical malpractice action against Dr. Rice, he requested through interrogatories that Poe disclose her expert witnesses. 706 S.W.2d at 6. In her replies, Poe repeatedly objected to "producing" her expert witnesses at that time (for reasons not explained in the opinion), but continued to maintain their existence. *Id.* Nonetheless, because Poe did not disclose her experts as requested by the defendants, the trial court granted the defendant's motion for summary judgment. The Court of Appeals reversed and remanded.

*Poe* is a very cursory opinion in which the Court of Appeals did not include any facts regarding when Poe filed her complaint, when or if the court had set a trial date, or when or if Poe was required by the court to disclose her experts although it appears that, at the time the trial court granted summary judgment, the parties were still engaging in early discovery. Regardless, *Poe, supra,* was certainly not

**2.** We deliberately refrain from setting any time lines for identification of expert witnesses because each case must be considered by the trial court on a case-by-case basis. In this case, Collier was given adequate time.

a case where the plaintiff had acknowledged the requirement that she disclose her experts and then, after the first and second expert disclosure deadlines expired, still had failed to identify any experts. Rather, Poe repeatedly had objected to Dr. Rice's early requests to disclose her experts (again for reasons unexplained) and yet the trial court apparently never imposed a deadline or ordered Poe to respond to the defendant's interrogatories. *Id.*

In this case, Collier was on notice of the importance of the expert disclosure deadline from the time the court entered its November 30, 2005 Civil Jury Trial Order, and he specifically requested an extension of that deadline to locate a potential expert. Unlike Poe's objections to Dr. Rice's requests, Collier never objected to the court-ordered expert disclosure deadline and never suggested, until his response to the motion for summary judgment, that his was the type of medical malpractice case that did not require expert testimony.

█ Finally, while CR 37.02 allows a trial court to enter an order sanctioning a party for failing for failing to provide or permit discovery, there is no requirement that a party first be sanctioned under CR 37.02 before the trial court grants a properly supported and timely filed summary judgment motion. CR 56 stands independently of the discovery sanction rules and, provided the non-moving party has been given sufficient time to respond, the trial court may grant the summary judgment motion without preliminarily sanctioning the plaintiff for failing to identify and to produce an expert witness.

### III. Plaintiffs In Typical Medical Malpractice Cases Cannot Proceed to Trial Without Disclosing Medical Experts.

█ Finally, Collier contends that plaintiffs are entitled to proceed to trial, and simply reserve the right not to call an expert witness. Collier admits that this course of action may have resulted in a directed verdict against him, but insists that such trial strategy is within a plaintiff's right. Although this trial strategy may be appropriate for a plaintiff alleging an ordinary negligence claim, that is simply not the case with medical negligence cases in Kentucky. As explained previously, a plaintiff bringing a typical medical malpractice case is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury. *Perkins v. Hausladen*, 828 S.W.2d at 655. A jury trial without the requisite proof is a futile exercise, wasteful of judicial time, jurors' time and the litigants' time and resources. CR 56 is intended to avoid such unnecessary proceedings. *Neal v. Welker*, 426 S.W.2d at 479–480 "the curtain must fall at some time upon the right of a litigant" to put forth the most basic level of proof and the plaintiff's bare assertion "that something will turn up' cannot be made basis for showing that a genuine issue as to a material fact exists"; *Green v. Owensboro Medical Health System, Inc.*, 231 S.W.3d at 784 (the trial court properly granted summary judgment for the defendant doctor because the plaintiff, by not identifying any expert witnesses, "failed to introduce evidence sufficient to establish the respective applicable standard of care").

### CONCLUSION

Despite Collier's argument that the summary judgments were actually a sanction for his failure to meet an expert disclosure deadline, the trial court based its grant of summary judgment on Collier's failure of proof. The trial court properly held, pursuant to CR 56.03, that without expert testimony there was no issue of

material fact and, as a matter of law, Collier could not sustain his burden of proof. Although Collier asserts that the trial court should have followed the procedure in *Baptist Healthcare, supra,* and first entered a separate ruling regarding whether experts were needed before ruling on the defendants' summary judgment motion, Collier's failure to create a reasonable, legitimate dispute about the need for expert testimony rendered the procedure in *Baptist Healthcare, supra,* inapplicable. Thus, the trial court did not abuse its discretion in deciding to take up and rule on the summary judgment motion at a point when it had not entered CR 37.02 sanctions against Collier or an order requiring him to obtain experts. Because the trial court correctly found that there were no genuine issues as to any material fact and that the defendants were entitled to a judgment as a matter of law, the Court of Appeals Opinion is reversed, and the Jefferson Circuit Court's summary judgments for Dr. Blankenship and Caritas are reinstated.

CUNNINGHAM, NOBLE and SCHRODER, JJ., concur.

MINTON, C.J., dissents by separate opinion.

SCOTT, J., dissents by separate opinion in which VENTERS, J., joins.

VENTERS, J., dissents by separate opinion.

MINTON, Chief Justice, dissenting.

I believe the majority's approach to this recurring issue in medical malpractice cases is sound. However, under the specific facts of this case, I agree with Justice Venters that the trial court (and, by extension, this Court) impermissibly shifted the burden on summary judgment from the movants, Caritas and Blankenship, to the respondent, Collier. Had the movants presented an adequately particularized and supported motion for summary judgment, I would join the majority opinion. Because they did not do so, however, I respectfully dissent.

SCOTT, Justice, dissenting opinion.

I share the majority's desire to terminate doubtful malpractice claims as early as practical, but I must dissent, since such a practice under CR 56—similar to the federal practice—is totally inconsistent with our summary judgment standard established under *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 483 (Ky.1991) ("[I]t should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.'") (citing *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985)). This is a standard that this Court has continued to follow for decades. *See Baptist Healthcare Systems, Inc. v. Miller,* 177 S.W.3d 676, 681 (Ky. 2005) ("It is inappropriate to use a CR 56 summary judgment to resolve what is essentially a procedural dispute as to the need for an expert, the disclosure of the expert's identity, and the substance of the testimony."); *Ward v. Housman,* 809 S.W.2d 717, 719 (Ky.App.1991) ("CR 56, Summary Judgments, is not to be used as a sanctioning tool of the trial courts."); *see also Poe v. Rice,* 706 S.W.2d 5, 6 (Ky.App. 1986) ("In essence then, the court below has improperly attempted to resolve an essentially procedural conflict arising from discovery with a rule founded upon the resolution of legal issues arising upon undisputed facts. This it cannot do.").

Moreover, we have previously rejected adoption of the federal summary judgment standards. "[W]e perceive no oppressive or unmanageable case backlog or problems

with unmeritorious or frivolous litigation in the state's courts that would require us to adopt a new approach such as the new federal standards." *Steelvest,* 807 S.W.2d at 482–83. We have done so in the belief that, in such circumstance as here, a judicious application of CR 37.02(2),(3) is more appropriate.[3]

CR 56 on the other hand, is predicated upon the trial court's finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Baptist Healthcare Systems, Inc.,* 177 S.W.3d at 681. The distinction between the two rules—which we ignore in this instance—is that, under one (CR 37.02), a party has not disclosed his proof as ordered, while, under the other (CR 56), the material fact is undisputed and thus there can be no proof to the contrary.

Here, Appellants filed no motion for CR 37 sanctions upon the Appellee's failure to provide his experts as previously ordered. To the contrary, Appellant's first response was a motion for summary judgment, which was ultimately granted. While such action may, in rare instances, be an appropriate sanction for counsel, it is not necessarily so for one's client, who in fact may have a meritorious claim. This effect on a party who asserts a wrong subject to redress is why—for many years—we have maintained the distinctions between CR 56 and CR 37.02 and have refused to rush to the federal standards for summary judgment. This is because CR 37.02 is better situated to address the nature and extent of the conduct, rather than assuming the non-existence of a material fact merely as punishment. Thus, as the Court noted in *Ward:*

3. CR 37.02 provides:
(1) Sanctions by court in judicial district where deposition is taken.
If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the judicial district in which the deposition is being taken, the failure may be considered a contempt of that court.
(2) Sanctions by court in which action is pending.
If a party or an officer, director, or managing agent of a party or a person designated under Rule 30.02(6) or 31.01(2) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Rule 37.01 or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(a) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
(d) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;
(e) Where a party has failed to comply with an order under Rule 35.01 requiring him to produce another for examination, such orders as are listed in subparagraphs (a), (b) and (c) of this paragraph (2), unless the party failing to comply shows that he is unable to produce such person for examination.
(3) Expenses on failure to obey order.
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Considering whether a case should be dismissed for dilatory conduct of counsel, it would be well for our trial courts to consider ... these relevant factors:

1) the extent of the party's personal responsibility;

2) the history of dilatoriness;

3) whether the attorney's conduct was willful and in bad faith;

4) meritoriousness of the claim;

5) prejudice to the other party, and

6) alternative sanctions.

*Ward,* 809 S.W.2d at 719.

If this Court perceives the need for a "heavier hand" toward dilatoriness, it can be accomplished in precise and tailored steps under CR 37.02, giving the client a "shot across the bow" and thus a the chance to save a meritorious claim. However, a "heavier hand" under CR 56 destroys the client's case with the first blow. This seems to me to unnecessarily take away what our forefathers so wisely granted, to wit: "every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." KY Const. § 14. Thus, I must respectfully dissent.

VENTERS, J., joins this dissent.

VENTERS, Justice, dissenting.

I join Justice Scott's dissenting opinion and I write separately to emphasize my concern that both the trial court and the majority decision in this court have, for medical malpractice cases, created a rule that shifts the burden on summary judgment away from the movant, to the respondent.

Caritas and Blankenship moved for summary judgment, each stating simply that Collier's failure to disclose an expert medi-cal witness entitled them to summary judgment. Neither Caritas nor Blankenship presented with its motion any facts or evidence in the record to show that Collier could not succeed without expert testimony. Collier responded accurately citing *Baptist Healthcare Systems, Inc. v. Miller,* 177 S.W.3d 676 (Ky.2005), for the point that an expert witness is not an essential element of a medical malpractice tort, and accordingly the failure to disclose one in advance of trial does not, in and of itself, justify dismissal of the claim by summary judgment. The trial judge granted summary judgment, without reference to any specific facts of record that would negate the ability of Collier to prevail at trial other than his failure to have an expert, and further stated, "The Plaintiff has been instructed by the Court to demonstrate such expert testimony is available.... Since the Plaintiff has failed to identify and disclose any expert witness, summary judgment, as a matter of law is appropriate...." By not requiring the movants to particularize their claim with facts to show why Collier could not prevail, the trial court shifted the burden on the summary judgment motion to Collier.

The trial judge may have been aware of specific undisputed facts in the record to support her conclusion that Collier could not prevail without expert testimony. But, where the only specific fact upon which the summary judgment is grounded is Collier's violation of the order to disclose his expert, the obvious conclusion is the one reached by Justice Scott, that Rule 56 is being misused to discipline a Rule 37.02 violation.

It is the party moving for summary judgment that bears the burden to establish that the lack of a genuine issue of material fact. Only after that burden has been met does the opposing party have any need to show that evidence is available justifying a trial. *Continental Casualty*

*Company, Inc. v. Belknap Hardware & Mfg. Co.,* 281 S.W.2d 914, 916 (Ky.1955). The Majority opinion holds that since Collier did not dispute the need for an expert, he failed to establish a genuine issue of material fact at the time Dr. Blankenship and Caritas filed their summary judgment motions. Thus, the Majority opinion creates a presumption for medical malpractice cases that a plaintiff must employ expert witnesses. It thereby relieves the defendants from the need to support a summary judgment motion with facts demonstrating the need for an expert, and shifts the burden on summary judgment to the plaintiff to show that no expert is needed, or that he will obtain the required expert testimony from another source, such as the defendant's witnesses, the defendant's admissions, or medical records. The summary judgments entered herein should be reversed and the matter remanded to the trial court for further proceedings which could include a properly supported motion for summary judgment.