RENDERED:  SEPTEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000094-MR

TEDDY COOPER AND
LORI COOPER, HIS WIFE                                        APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.         HONORABLE ANGELA MCCORMICK BISIG, JUDGE
ACTION NO. 13-CI-001115


AJITH NAIR, M.D. AND
KENTUCKIANA PAIN
SPECIALISTS, P.S.C.                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K. JUDGE:  Teddy Cooper and his wife, Lori Cooper, filed this

action against Ajith Nair, M.D. and Kentuckiana Pain Specialists, P.S.C.

(collectively Dr. Nair) for medical malpractice and loss of consortium.  The

Jefferson Circuit Court granted Dr. Nair's motion for summary judgment

concluding that there was no genuine issue of material fact on the necessary element of whether Dr. Nair breached the standard of care. The Coopers filed a motion to alter, amend or vacate, which was denied. This appeal followed.

Teddy was referred to pain management with Dr. Nair on May 24, 2011, for back pain. Dr. Nair initially treated Teddy with epidural injections. However, Teddy's pain persisted, and Dr. Nair prescribed him Percocet. Teddy continued this medication regime, and then underwent four injections starting in September 2011 for neck pain. After Teddy's pain continued, Dr. Nair performed a radiofrequency ablation at C4, C5 of the medial branch nerve on the right side. Dr. Nair performed a total of five radiofrequencies through December 13, 2011.

On January 17, 2012, Teddy reported to Dr. Nair that his pain had returned. Dr. Nair then discussed the option of implantation of a pain pump or spinal stimulator, both of which would require a trial prior to actual implantation. Teddy agreed to proceed with the pain pump trial. Teddy was told of the adverse effects of the pain medication, Dilaudid, which would be used in the pain pump trial. He continued to take Percocet for pain.

The pump trial consisted of placing a temporary tunneled catheter in the epidural space, connected to an external pump, and then the infusion of Dilaudid to test Teddy's tolerance to the drug.

On March 6, 2012, Dr. Nair placed the temporary catheter in the epidural space and attached it to the external trial pump. There were no complications and Teddy was discharged from the hospital the same day.

After returning home, Teddy laid down for a nap with his CPAP on for his sleep apnea. At about 1:15 p.m., Lori and the Coopers' son checked on Teddy, found him unresponsive and began CPR. Paramedics arrived and administered multiple doses of Narcan, a drug used for overdose victims. Teddy was intubated, and the paramedics continued chest compressions. Teddy was transferred to the Knox Ireland Army Hospital, where he was resuscitated, and the breathing tube was removed. The epidural catheter was clamped, and the batteries were taken from the external pump. Teddy was transferred to the Hardin Memorial Hospital where the catheter and pump were removed. He remained hospitalized for three days.

The Coopers filed this action alleging Dr. Nair breached the standard of care required by a medical professional when administering an excessively high dose of Dilaudid. The case was set for trial on September 18, 2018. That date was continued in February 2018 after the Coopers requested a continuance to have additional time to name an expert witness. That request was granted, and the Coopers subsequently made their expert disclosures pursuant to Kentucky Rules of Civil Procedure (CR) 26.02(4), which included Dr. Robert Masone, a Board

Certified Anesthesiologist. In their disclosure, the Coopers provided Dr. Masone's unsworn report dated May 5, 2018.

Dr. Masone noted in his report that Dr. Nair had Teddy on high levels of pain medication and that the opioid delivered through the epidural Dr. Nair inserted made the dosage more potent. In his report, Dr. Masone opined:

> In my medical opinion, with a reasonable degree of medical certainty, the dose of Dilaudid used for the epidural trial for Mr. Cooper was too high and was the direct and proximate cause of his respiratory depression, loss of consciousness, and aspiration pneumonia. This was below the standard of care of similar practitioners in a similar situation.

Following the CR 26.02(4) disclosure, Dr. Masone's discovery deposition was taken on July 13, 2018.

In that deposition, defense counsel questioned Dr. Masone about the opinion expressed in his report. The relevant part of the exchange between defense counsel and Dr. Masone was as follows:

> Counsel: And is it correct that the gist of your report is that you're critical about the dosing that Dr. Nair used for this patient, Mr. Cooper?
>
> Dr. Masone: That's correct.
>
> Counsel: And other than what you've said about the bolus dose, is there any other criticism of Dr. Nair that you have at all?
>
> Dr. Masone: Can I see my report, please?

-4-

Counsel:  Sure.

Dr. Masone:  My criticism is, indeed, the dose used in doing the trial.

Counsel:  So this is my chance to talk to you about that and walk out of here trying to understand what you say.

Dr. Masone:  But I reserve the right to amend that opinion–

Counsel:  You don't have any right to amend.

Dr. Masone:  –should new information be made available.

Counsel:  People say that all the time.  You don't have any right to amend it.

Dr. Masone:  I'd still like it in the record.

Counsel:  Okay, you can play lawyer.

The dialogue continued:

Counsel:  This is my chance to find out what you're going to say, and counsel's chance to tell me what you're going to say.  If you come up with something new I'm going to be very unhappy.

Dr. Masone:  Just looking for the truth, sir.

Counsel:  Me too.  So we'll get to those dose opinions in just a second.  But that's the gist of this criticism, correct?

Dr. Masone:  Correct.

Counsel:  Do you believe that Dr. Nair's dose was below the applicable standard of care for this patient?

Dr. Masone: Can I play lawyer again? *Res ispa loquitur*, the matter speaks for itself. Has that dose ever been given? Probably. How do you say his name?

Counsel: Nair, rhymes with fire.

Dr. Masone: My guess is he's used that dose before,

Counsel: Without incident?

Dr. Masone: Without incident. He may have. I don't know that. I know I have used doses before, and when I've reviewed my notes, I said boy, I was a little bold in that. I'm going to be more conservative next time. *So had he—I'm not going to say it was below the standard of care, but I will say it caused the incident.*

(Emphasis added).

Dr. Masone testified that to make the pump trial work, sometimes a doctor will be aggressive and give a dose of pain medication on the high end of the dosage spectrum. However, he again testified he would not say the dosage given by Dr. Nair to Teddy was a breach of the standard of care:

This dose, while I'm not going to say was out of the standard of care, was in the higher end of the spectrum of bolus doses. I have probably done that. I don't know. I don't have any charts in front of me. But I don't think I've ever gone that high, especially with Dilaudid. Dilaudid is different.

On July 20, 2018, Dr. Nair filed a motion for summary judgment on the basis that Teddy failed to provide expert testimony that Dr. Nair breached the standard of care and, in fact, Dr. Masone testified Dr. Nair did not breach the

standard of care. In response, the Coopers relied on Dr. Masone's unsworn report and his testimony that Dr. Nair's aggressive dosage of Dilaudid was on the high end of the spectrum doses.

The trial court noted Dr. Masone was not critical of the bolus but of the dosage used and explicitly testified he could not say the Dilaudid dosage fell below the standard of care. The trial court ruled that Dr. Masone's unsworn report was insufficient to overcome his later sworn testimony and, concluding that Teddy had not produced affirmative evidence that Dr. Nair breached the applicable standard of care, granted summary judgment in Dr. Nair's favor on the Coopers' claims.

The Coopers filed a motion to alter, amend or vacate alleging Dr. Masone's testimony was sufficient to defeat Dr. Nair's summary judgment motion, and arguing for the first time that the case did not require expert testimony based on *res ipsa loquitor*. In addition to reaffirming its prior reasoning, the trial court ruled that the proper dosage rate of administration of narcotic pain medications is not a matter of common knowledge and, therefore, expert testimony was required to establish that Dr. Nair breached the standard of care. The motion was denied, and this appeal followed.

The general summary judgment standard is applicable to medical malpractice cases. Summary judgment is appropriate where the "pleadings,

depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (internal quotation marks omitted).

"Although an appellate court reviews the substance of a summary judgment ruling *de novo*, 'a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling.'" *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky.App. 2016) (quoting *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010)). The Coopers do not dispute that they had a sufficient amount of time to complete discovery and, therefore, our only concern is with the substance of the trial court's summary judgment.

To survive summary judgment in a typical malpractice claim, the plaintiff "is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury." *Blankenship*, 302 S.W.3d at 675. Two narrow exceptions exist to the

requirement of an expert witness: *res ipsa loquitur* cases, where negligence and causation may be inferred from the mere occurrence of the event and the defendant's relation to it, and where the defendant physician makes certain admissions that make his negligence apparent. *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992). When a sufficient amount of time for discovery has passed and the plaintiff has not introduced sufficient evidence to establish the applicable standard of care, the defendant is entitled to summary judgment as a matter of law. *Blankenship*, 302 S.W.3d at 668.

The Coopers argue there are two reasons why the trial court's summary judgment should be reversed. First, they argue Dr. Masone was disclosed as an expert in their CR 26.02(4) disclosure. In that same disclosure, they noted Dr. Masone would testify as to the standard of care expected of a medical practitioner and that Dr. Nair's alleged negligence was the proximate cause of Teddy's injury. The Coopers argue that despite Dr. Masone's sworn testimony to the contrary, disclosing Dr. Masone's report wherein he opined that the pain dosage administered by Dr. Nair to Teddy was below the applicable standard of care was sufficient to defeat Dr. Nair's summary judgment motion. Second, the Coopers argue this is a "classic case of *res ispa loquitur* so that no expert was required."

As the Coopers note, they identified Dr. Masone as an expert. However, they overlook that Dr. Masone expressly stated in his sworn testimony that while he was critical of Dr. Nair's dosage decision, he would not say Dr. Nair breached the standard of care by administering the dosage of Dilaudid.

CR 56.03 provides the specific affirmative evidence to be considered by the trial court when determining whether summary judgment is proper. It specifically lists "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits[.]" *Id.* Dr. Masone's report was not in affidavit form nor sworn to in any way. As an unsworn medical report is not listed in CR 56.03 to be considered by the trial court when granting or denying summary judgment, Dr. Nair asserts that Dr. Masone's unsworn medical report may not be considered to defeat his properly supported motion for summary judgment. We agree.

Federal Rules of Civil Procedure (FRCP) 56(c) corresponds to Kentucky's CR 56.03, stating "that a summary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Steelvest, Inc.*, 807 S.W.2d at 480 (quoting FRCP 56(c)). Interpreting the federal rule, the federal Sixth Circuit Court of Appeals has previously held that a court

may not consider unsworn statements when ruling on a motion for summary judgment. *See Pollock v. Pollock*, 154 F.3d 601, 611 n. 20 (6th Cir. 1998) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991)).

Moreover, Dr. Masone expressly stated in his sworn deposition testimony that he would not say the Dilaudid dosage administered by Dr. Nair fell below the standard of care and, therefore, his sworn testimony directly contradicted his unsworn report. As observed in *Gilliam v. Pikeville United Methodist Hospital of Kentucky, Inc.*, 215 S.W.3d 56, 62-63 (Ky.App. 2006) (internal footnotes omitted):

> The Kentucky Supreme Court recently noted that "'[a]s a general proposition, a deposition is more reliable than an affidavit.'" While a post-deposition affidavit may be admitted to explain deposition testimony, "an affidavit which merely contradicts earlier testimony cannot be submitted for the purpose of attempting to create a genuine issue of material fact" to avoid summary judgment.

If a deposition is more reliable than an affidavit, certainly it is far more reliable that an unsworn medical report. Consequently, an earlier unsworn medical report that contradicts later deposition testimony cannot be submitted for the purpose of attempting to create a genuine issue of material fact to defeat a properly supported summary judgment motion.

In their CR 59.05 motion, the Coopers argued for the first time that expert testimony was not required. "Whether expert testimony is required in a

given case is squarely within the trial court's discretion. Absent an abuse of discretion, we will not disturb the trial court's ruling." *Brown*, 505 S.W.3d at 782 (citation omitted).

The trial court did not abuse its discretion when it determined expert testimony was required. As the trial court observed, it is not within the common experience of a lay juror to know the proper dose of opioids to deliver through the pain pump trial for Teddy. Consequently, whether Dr. Nair breached the applicable standard of care required expert testimony.

Because Teddy did not produce affirmative expert testimony that Dr. Nair breached the standard of care in response to Dr. Nair's motion for summary judgment, the trial court properly granted summary judgment on Teddy's medical malpractice claim. As Kentucky Revised Statutes (KRS) 411.145 permits recovery for loss of consortium only where a plaintiff's damages result from a negligent or wrongful act, Lori's loss of consortium claim likewise fails.

For the reasons stated, the summary judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:                    BRIEF FOR APPELLEES:

Larry D. Ashlock                          Richard P. Schiller
Elizabethtown, Kentucky                   Louisville, Kentucky