RENDERED:  MAY 1, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1356-MR

JESSICA THORNTON                                                 APPELLANT


v.
                  
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MELISSA L. BELLOWS, JUDGE
ACTION NO. 24-CI-005979


LOUISVILLE METRO
GOVERNMENT                                               APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, ECKERLE, AND MOYNAHAN, JUDGES.

ECKERLE, JUDGE:  Appellant, Jessica Thornton ("Thornton"), seeks review of the Opinion and Order of the Jefferson Circuit Court granting summary judgment to Appellee, Louisville Metro Government ("Louisville Metro") on Thornton's complaint under Kentucky's Open Records Act ("the KORA").  After careful review, we find summary judgment to be improper, as a genuine issue of material fact exists regarding the alleged email attachments missing from Louisville

Metro's responses to Thornton's open record requests. Accordingly, we reverse the Trial Court's Order of summary judgment and remand for further proceedings.

## Factual and Procedural Background

This appeal arises from a complaint filed by Thornton on August 23, 2024, to enforce provisions of the KORA, Kentucky Revised Statutes ("KRS") 61.870 *et seq.*, against her former employer, Louisville Metro. After being terminated by Louisville Metro in October of 2023, Thornton filed a series of open records requests seeking a variety of documents, emails, and, relevant to this appeal, records sent by email attachment. Through these record requests, Thornton sought evidence that she had been wrongfully terminated by Louisville Metro based on a pretext that she had retaliated against an employee for his protected use of leave under the Family Medical Leave Act. To that end, Thornton requested a number of personnel records; in particular, she sought monthly lists of employees thought to be abusing or at risk of using sick leave that were sent to supervisors by email attachment.

Although Louisville Metro provided responses to each of her record requests, Thornton alleged in her complaint that she knew of additional documents that had existed during her time as an employee and that Louisville Metro had not provided, including the email-attached lists of employees. In response to that complaint, Louisville Metro filed a Motion to Dismiss under Kentucky Rule of

Civil Procedure ("CR") 12.02 on September 12, 2024. Noting that Louisville

Metro had offered appendices of additional evidence outside the pleadings to

support its motion, the Trial Court properly treated the dismissal motion as one for

summary judgment under CR 56. In a brief, two-page dispositive Order ruling on

the merits of the motion, the Trial Court found that Thornton had filed a number of

open record requests with Louisville Metro, to which Louisville Metro "provided

numerous documents which it affirmatively represent[ed] to be all of the non-

exempt records in its possession." Order at 2. The Trial Court held that this

production discharged any further duty of Louisville Metro under the KORA and

that the onus then fell on Thornton to present affirmative evidence that would be

sufficient to make a *prima facie* showing of the existence of additional records that

Louisville Metro wrongly failed to produce. The Trial Court concluded:

> The Court is satisfied that, even when viewing the
> evidence in the light most favorable to Ms. Thornton, she
> has failed to do so. There is nothing in the record to
> reasonably or fairly suggest that Louisville Metro has
> done other than act in good faith to produce that which is
> required in the manner required. In the absence of
> affirmative proof to the contrary, merely asserting
> otherwise does not create a genuine issue of material fact.
> Moreover, and insofar as the parties have had a
> reasonable opportunity to present all pertinent material, it
> is neither necessary nor appropriate to permit additional
> discovery in this matter. To do so would [sic] under the
> circumstances would place an undue burden on
> Louisville Metro.

*Id*. The Trial Court also stated that this Order would be final and appealable. This appeal followed.

## Standard of Review

In reviewing a Trial Court's grant of summary judgment, our Supreme Court has noted that "[s]ummary judgment is improper unless it would be 'impossible for the respondent to produce evidence at trial warranting a judgment in his favor and against the movant.'" *Welch v. Am. Publ'g Co. of Kentucky*, 3 S.W.3d 724, 729-30 (Ky. 1999) (quoting *Steelvest v. Scansteel Service Center*, 807 S.W.2d 476, 483 (Ky. 1991)). In considering a motion for summary judgment, "trial judges are to refrain from weighing evidence at the summary judgment stage[.]" *Id*. Instead, "[t]he inquiry should be whether, from the evidence of record, facts exist which would make it possible for the non-moving party to prevail." *Id*. As we have observed, Kentucky legal precedent requires the non-moving party to respond with specificity and an affirmative defense, to wit:

> It is well established that a party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and . . . the question should be taken from the jury when the evidence is so unsatisfactory as to require resort to surmise and speculation." "'Belief' is not evidence and does not create an issue of material fact." Furthermore, the party opposing summary judgment "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but

-4-

must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*McAlpin v. American Gen. Life Ins. Co.*, 601 S.W.3d 188, 193 (Ky. App. 2020) (internal quotation marks and citations omitted).

"Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (footnote omitted). However, our Supreme Court has also clarified:

> [E]ven though an appellate court always reviews the substance of a trial court's summary judgment ruling *de novo*, *i.e.*, to determine whether the record reflects a genuine issue of material fact, a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling. . . . The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion.

*Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).

## Analysis

In analyzing the Trial Court's grant of summary judgment, we must rely upon "the substantive law's identification of which facts are critical and which facts are irrelevant." *Kearney v. University of Ky.*, 638 S.W.3d 385, 397 (Ky. 2022) (citations omitted). Thus, if there are any issues of material fact resulting

-5-

from Thornton's claim that Louisville Metro violated the KORA by allegedly failing to turn over or withholding documents, those issues must relate to facts that Thornton is "able to prove." *Id.* Although Thornton's complaint raised allegations that a number of responsive documents had been improperly withheld by Louisville Metro, in whole or in part, she concedes that the existing record contained no affirmative evidence to substantiate most of these allegations at the time that the Trial Court issued its Order.

There is no significant dispute by either party that Louisville Metro provided hundreds of pages of records responsive to Thornton's multiple open records requests. However, Thornton identifies a material dispute over two requests for the "emails and documents" identifying individuals who "put in sick leave abuse" between 2014 and 2019. Record ("R.") at 2, 19-34. Although Louisville Metro produced at least four emails that appear to address the specific documents sought, Thornton notes that the subject emails show evidence of attached files that Louisville Metro did not include in its first response. Thornton also alleges that Louisville Metro's response to her second request, which was tailored specifically to obtain those attachments, also failed to include the requested records. In response to Louisville Metro's Motion to Dismiss, which Thornton noted was more properly a request for summary judgment, Thornton offered a sworn affidavit attesting to her knowledge that the reports of sick leave

abuse existed and were originally included as attachments to the four emails produced. R. at 95-96. Although Thornton did not attach to her response the emails that Louisville Metro had supplied to her, she did identify them by date and sender.

At issue in this appeal is the nexus between the findings necessary for a Court to grant a party's motion for summary judgment and the burden shifting required under the KORA when parties contest the existence of a record. More particularly, we must determine whether the Trial Court provided an adequate opportunity for discovery and response by Thornton to the motion for summary judgment. In the past, our Supreme Court has held that extended periods of lapsed time or thorough discovery in a case made summary judgment appropriate despite an appellant's claim that it had not received sufficient opportunity to develop its case. *See Blankenship v. Collier*, 302 S.W.3d 665 (Ky. 2010) (finding a motion for summary judgment was properly before the Trial Court when the plaintiff had failed to identify an expert witness in 17 months since filing a malpractice suit, despite conceding that an expert would be necessary to prove his claim).

However, no similar lapse of time exists in this case. Thornton filed her Verified Complaint against Louisville Metro on August 23, 2024. Louisville Metro moved to dismiss the complaint and filed a Memorandum in Support of Defendant's Motion to Dismiss on September 12, 2024, with exhibits showing

partial file names provided to Thornton in response to each of her open record requests that it asserted showed it had met its obligations under the KORA. Thornton filed her response and the accompanying affidavit on October 11, 2024.

On October 22, 2024, in its reply to Thornton, Louisville Metro also filed the Affidavit of Linton Hauss ("Hauss"), an Open Records Specialist with the Records Compliance Division of Louisville Metro. Hauss's affidavit described the general process by which Louisville Metro responds to open records requests, including the technical manner by which it searches for responsive documents, and confirmed that this process was used for all of Thornton's requests. Notably, Hauss does not profess that he personally performed any of the described steps for any of Thornton's requests and does not specifically address the requests that Thornton asserts had missing records. Moreover, his affidavit only addresses email searches. It is entirely silent on whether this search process also produces email attachments or whose responsibility it is to provide any responsive attachments to each email. R. at 104-05. Louisville Metro's reply is similarly mute on this specific issue of email attachments.

Thornton argues on appeal that the Trial Court did not allow her sufficient opportunity for discovery or development of evidence prior to granting the motion for summary judgment, particularly given the short timeline between the filing of the complaint and the grant of summary judgment. Louisville Metro

contends that the Trial Court properly granted summary judgment, and that further

discovery would not have changed the outcome of its decision. In support of their

positions, both parties cite to *Bowling v. Lexington-Fayette Urban County Gov't*,

which forms the cornerstone of the limited precedent addressing disputes about the

existence of records under the KORA versus their exemption. 172 S.W.3d 333,

341 (Ky. 2005). As the Kentucky Attorney General previously observed,

> Kentucky's courts have struggled with the dilemma
> posed when agencies deny a record's existence rather
> than claiming a statutory exemption as the basis for
> denial. The courts recognized, on the other [sic] hand,
> that "allowing public agencies to avoid judicial review by
> denying a record's existence . . . remove[s] accountability
> from the open records process," and, on the other, that
> public agencies may be unreasonably burdened by "the
> unfettered possibility of fishing expeditions for hoped-for
> but nonexistent records. . . ." *Bowling v. Lexington-
> Fayette Urban County Government*, 172 S.W.3d 333,
> 341 (Ky. 2005). The courts resolved the dilemma by
> determining that "before a complaining party is entitled
> to . . . a hearing [to disprove the agency's denial of the
> existence of records,] he or she must make a *prima facie*
> showing that such records do exist."

*Cabinet for Health and Family Services v. Todd County Standard, Inc.*, 488

S.W.3d 1, 3-4 (Ky. App. 2015) (quoting Attorney General's Opinion 11-ORD-

074).

Louisville Metro contends, and the Trial Court agreed, that Thornton

did not make a *prima facie* showing of the allegedly missing records, including the

email attachments containing sick-leave-abuse reports that she sought. She offered

-9-

an affidavit – a sworn averment – attesting to her own personal knowledge. In asserting its position, Louisville Metro cites the holding in *Bowling*, as well as other opinions of the Attorney General interpreting that case, which found that "the existence of a statute, regulation, or case law directing the creation of the requested record creates a presumption of the record's existence[.]" *Id*. at 4. While Louisville Metro interprets the case law to mean that a *prima facie* showing must be made in this manner and that affidavits alone are insufficient, we do not find our precedent so restrictive.

A review of *Bowling* requires a more nuanced analysis. In that case, Bowling submitted affidavits from law enforcement officers asserting that documents had existed in the past. However, this showing that the records had once existed was rebutted by Lexington-Fayette Urban County Government's policies, which were also referenced by officers in Bowling's own affidavits, that those types of records would be purged after five years unless they became part of an active investigation. *Bowling*, 172 S.W.3d at 342. Moreover, the appellant in *Bowling* had the opportunity to obtain extensive, sworn testimony from numerous current and former law enforcement officers that satisfied the Court that the appellee had complied with its obligations under the KORA and with the Court's orders. *Id*. It is in this context that we found that the *Bowling* Trial Court properly

denied Bowling's request for an evidentiary hearing and quashed further subpoenas to other government agencies.

Louisville Metro next cites *University of Kentucky v. Hatemi* to advance both its contention that Thornton failed to make the required *prima facie* showing and that, even if she did, Louisville Metro rebutted that showing by offering evidence of a good faith search to locate the alleged records. 636 S.W.3d 857 (Ky. App. 2021). However, it is not immaterial to our analysis of Louisville Metro's argument that the requester in that case, Dr. Lachin Hatemi, "seem[ed] to have known little about the nature" of the group of faculty advisors from whom he requested meeting minutes. *Id.* at 866. As a result of his lack of familiarity with the informal nature of the group, Dr. Hatemi's assertion that the University failed to produce records that should exist carried little weight.

More particularly in *Hatemi*, the parties engaged in discovery, including taking depositions of numerous University officials and group members who all agreed that the group of advisors had never been established as a formal committee, never met regularly, and rarely provided any sort of written reports or even meeting summaries to the Dean that they advised. *Id.* Notably, our review in *Hatemi* primarily focused on the attempts made by the Official Records Custodian of the University of Kentucky to respond to Dr. Hatemi's request, including contacting the appropriate officials to ask whether any meeting minutes or notes

were ever kept and confirming that they had searched their records for any documents that might be responsive. *Id.* at 866-67. All of the discovery performed substantiated the University's assertion that it had conducted more than a cursory search for records that were of questionable existence.

Ultimately, we find important distinctions between the precedents of *Bowling* and *Hatemi* and the case *sub judice*. While those cases involved requesters unaffiliated with the public agency or working group in question, Thornton was an employee of Louisville Metro for nine years. Not only did she provide a sworn affidavit attesting that she had personally reviewed many of the requested email attachments while serving in that role, but Thornton also identified four emails provided by Louisville Metro that showed documents had been attached when the emails were sent. From the lists of document names that Louisville Metro offered as support for its Motion to Dismiss, it is impossible to tell whether any of the documents supplied were the original attachments to those emails. Thornton has supplied evidence that they are not. This proffer is more than a bare assertion of belief as required to respond to a motion for summary judgment, and it is sufficient to establish a *prima facie* showing that the email attachments did, at least at one point in time, exist.

On the other hand, Louisville Metro has failed to represent that these email attachments were specifically searched for and to identify the person who

may have conducted that search. Unlike the open record disputes in *Bowling* and *Hatemi*, the Trial Court granted summary judgment solely on the basis of an affidavit that failed to address whether a good faith search was actually conducted for the allegedly missing email attachments. Because this affidavit was filed as part of Louisville Metro's reply to Thornton's response to the Motion to Dismiss, Thornton had no opportunity to respond to this bare-bones description of a search until the filing of this appeal. She also had no opportunity to issue interrogatories or take deposition testimony regarding the sufficiency of any search that was made for the requested email attachments or any other allegedly withheld records. Notably, Louisville Metro's brief entirely ignores the question of email attachments, despite Thornton's clear statement that the attachments were the heart of the dispute on appeal.

Given this silence, we find that there remains an issue of material fact over whether Louisville Metro performed a proper, good faith search in responding to Thornton's request for the email attachments related to abuse of sick leave. In this light, the Trial Court's very brief conclusion that there was no evidence to support a need for further discovery or inquiry into the affidavit that Thornton produced is not supported by the facts, early procedural posture, or sound legal principles, and it thus appears arbitrary. Accordingly, we must find that the Trial Court abused its discretion by prematurely granting summary judgment without

further proceedings while Louisville Metro had not yet described a sufficient search for those records as required under *Bowling* and *Hatemi*. To the extent that discovery regarding the alleged email attachments provides affirmative evidence of the other allegedly missing records that Thornton describes, Louisville Metro must similarly meet its burden of showing reasons that those records could not be produced, if indeed it continues to be unable to produce them. Although summary in nature, judgments are not to be issued summarily. More factual discovery, and more analysis of the claims and documents provided, remains needed here.

## **Conclusion**

For the foregoing reasons, we reverse the Trial Court's Opinion and Order granting summary judgment and remand for further proceedings consistent with this Opinion, including discovery and future motion practice.

ALL CONCUR.

BRIEF FOR APPELLANT:

David Borum
Louisville, Kentucky

BRIEF FOR APPELLEE:

Natalie Johnson
Jefferson County Attorney's Office
Louisville, Kentucky