C. Lance LOVE, M.D. and C. Lance Love, M.D., PLLC, Appellants

v.

Lisa WALKER and Larry Walker, Appellees.

No. 2012–SC–000602–DG.

Supreme Court of Kentucky.

Feb. 20, 2014.

---

E. Frederick Straub, Jr., Jonathan Rodgers Oliver, Whitlow, Roberts, Houston & Straub, PLLC, Paducah, KY, for Appellants.

Wendell Holloway, Madisonville, KY, for Appellees.

Opinion of the Court by Justice KELLER.

This dispute involves a medical malpractice action filed by Lisa Walker and her husband, Larry Walker (the Walkers), against C. Lance Love, M.D., personally and individually, and C. Lance Love, M.D., PLLC (hereinafter collectively referred to as Dr. Love). The issue on appeal is whether the Walkers' failure to name a medical expert witness constituted a failure of proof that justified the grant of summary judgment. For the following reasons, we affirm in part and reverse in part the Kentucky Court of Appeals.

## I. RELEVANT FACTS.

On February 28, 2006, Dr. Love performed a total thyroidectomy on Lisa. That same evening, Lisa experienced respiratory distress, and Dr. Van Meter, who was on call at the time, directed her to be placed on a ventilator. She remained on the ventilator for four days following the surgery and remained hospitalized for a total of twelve days. After the surgery, Lisa apparently experienced difficulty with breathing and speaking. Lisa consulted Dr. Dave, an otolaryngologist, who diagnosed her with right vocal cord paralysis.

On February 28, 2007, the Walkers filed a complaint alleging medical negligence in connection with the thyroidectomy that Dr. Love had performed. In his interrogatories, Dr. Love asked whether any physicians had indicated that Dr. Love had "deviated from the standard of good medical practice." The Walkers' response stated that their attorney had consulted with a surgeon to verify that there was a departure from the standard

of care to cut, stretch, tear, compress or damage the vocal cord of Lisa Walker that has caused her irreparable damage and great difficulty in breathing. The Plaintiff herself had discussions with her treating physicians and believes that they know there was a deviation from the standard of good medical practice and the Plaintiffs care[.]

The response then listed the following people as the treating physicians: Dr. Shah, who referred Lisa to Dr. Love; Dr. Dave, who diagnosed the vocal cord paralysis; Dr. Ossoff, an otolaryngologist who told Lisa that her right vocal cord was damaged during surgery; and Dr. Van Meter.

Depositions were taken on the following dates: the Walkers (June 17, 2008); Dr. Love (April 23, 2009); Dr. Dave (July 16, 2009); Dr. Shah (July 21, 2009); and Dr. Van Meter (August 12, 2009).

On November 19, 2009, Dr. Love filed a motion to set the case for trial and for a scheduling order requiring the Walkers to disclose expert witnesses in a timely manner. Dr. Love also tendered a proposed order which required the Walkers to disclose expert witnesses by a date certain. On January 13, 2010, the trial court entered a pretrial order setting the case for trial from November 29 through December 1, 2010. A pretrial conference was scheduled for September 29, 2010. The order contained no specific deadline for the disclosure of expert witnesses. It stated the following:

Discovery compliance and witness disclosure shall occur as quickly and efficiently as possible with utmost good faith expected of counsel. Discovery/disclosure shall be pursued in a manner that does not delay resolution of the case or result in delay of the trial. All disclosures anticipated under the civil rules shall be made sufficiently in advance of the pretrial conference to allow meaningful utilization by the opposing party. All discovery shall be completed at least ten days prior to the pretrial conference. Failure to file complete, accurate and timely information or failure to participate in discovery/disclosure as set out above may result in sanctions.

On July 12, 2010, Dr. Love moved for summary judgment arguing that it had been three years since the Walkers filed their lawsuit and that they had failed to identify an expert who would testify that Dr. Love had deviated from the applicable medical standard of care. The Walkers responded by filing a motion to reschedule the trial and for an extension of time to list their experts or to file a written report by an expert. Furthermore, the Walkers argued that summary judgment was inappropriate because evidence elicited in the depositions raised genuine issues of material fact and created a legitimate dispute about the need for a medical expert. In support of their argument, the Walkers pointed to the following evidence.

According to Lisa's medical records and the deposition testimony of Dr. Shah, Lisa was being treated for hypothyroidism, or an underactive thyroid, prior to the surgery. She consulted with Dr. Shah, an internal medicine physician, because she was experiencing shortness of breath and chest palpitation. An ultrasound of her thyroid gland showed a "slight enlarged right lobe of thyroid with small hypoechoic lesion." Dr. Shah referred Lisa to Dr. Love to consider whether surgical removal of her thyroid gland was an appropriate method for treating her symptoms.

Lisa had one consultation with Dr. Love before he performed surgery to remove her thyroid gland. Lisa signed a consent form on the day of the surgery which stated that her condition had been explained to her as "Thyroid nodule. Thyroid storm." Thyroid storm is a result of

hyperthyroidism, or an overactive thyroid. According to Dr. Shah, thyroid storm is a life threatening emergency condition requiring prompt treatment. Dr. Shah testified that the proper treatment for thyroid storm is not surgery, but immediate hospitalization and consultation with an endocrinologist. Dr. Shah further testified that, according to his workup or diagnosis of Lisa, she did not have thyroid storm, diffused goiter or thyrotoxic crisis.

In his deposition, Dr. Love testified that "[t]he clinical picture that [Lisa] presented was one of a multi-nodule thyroid gland and thyroid storm, an intermittent balance of excess thyroid activity leading to irregular heartbeat." He further testified that he did not tell Lisa that she needed surgery but rather that she herself had requested it. Dr. Love also testified that injury to the laryngeal nerve is a known complication of thyroidectomy and that paralysis of the right vocal cord can occur following a thyroidectomy even if the surgeon did not commit medical malpractice. Dr. Love testified that he did not know if he had cut, injured, or damaged Lisa's right laryngeal nerve during the course of the surgery.

Dr. Dave testified that paralysis of the right vocal cord can occur following a thyroidectomy even if the surgeon did not commit any medical malpractice. Additionally, like Dr. Shah, Dr. Dave testified that the proper treatment for thyroid storm is not surgery, but immediate hospitalization and consultation with an endocrinologist.

The operative report stated that Lisa's right laryngeal nerve was "densely adherent" to the right lobe of her thyroid gland. The nerve was dissected from the thyroid gland during the course of the surgery.

According to Lisa, Dr. Love never informed her that the surgery was optional and never warned her about any side effects beyond stating that she could live or die as a result of the surgery. Furthermore, Lisa testified that Dr. Love performed no independent pre-operative tests.

The Walkers argued that the deposition testimony created a legitimate dispute about the need for a surgical expert witness. They characterized the crucial issue as the fact that "Dr. Love did not do any workup before the surgery and that the surgery was not justified." They also contended that Dr. Love had misdiagnosed thyroid storm or used it as a fraudulent misrepresentation to justify surgery.

Following a hearing on July 28, 2010, the trial court entered an order granting Dr. Love's motion for summary judgment "due to failure of proof, not failure to meet a deadline. Motion not premature."

The Walkers filed a motion to alter, amend, or vacate the order and reiterated their position that a jury could understand a large portion of the evidence and that a surgical expert was not necessary. The Walkers subsequently filed a supplement to their motion to alter, amend, or vacate and attached a letter from Dr. Mitchell, an otolaryngologist at Nashville Clinic at St. Thomas Hospital. In their motion, the Walkers cited to Dr. Mitchell's statement that he agreed "that the critical part of the case is the presumption of 'thyroid storm' and 'toxic diffuse goiter' with inadequate clinical or laboratory support and whether procession to surgery was appropriate and whether the patient was given correct information to make an informed consent." However, Dr. Mitchell did not provide an opinion and stated that he did not feel that his areas of expertise were strong enough to serve as an expert in this case.

On October 19, 2010, the Walkers filed an unsworn letter from physician William R. Panje, an otolaryngologist with added

expertise in head and neck surgery, which stated as follows:

1. C[.] Lance Love, M.D. did not follow the standard of care in establishing a correct diagnosis of Lisa Walker's thyroid disorder prior to performing a thyroidectomy. Lack of performing the usual tests of thyroid antibodies, radioactive iodine uptake, and needle biopsy as well as knowing Mrs. Walker was taking Synthroid which can give rise to all of her symptomatology indicates Dr. Love's inappropriate recommendation of total thyroidectomy before considering appropriate medical therapy.

2. C. Lance Love, M.D. did not follow the standard of care in performing a total thyroidectomy before normalizing Lisa Walker's hyperthyroidism. His action of not having her hyperthyroidism corrected prior to her thyroid operation predisposed Mrs. Walker to a life threatening medical condition called Thyroid Storm.

3. C. Lance Love, M.D. did not follow the standard [of] care in performing a total thyroidectomy on Lisa Walker since surgery was not indicated. In performing a total thyroidectomy, Dr. Love injured Lisa Walker's nerve to her voice box (larynx) so that she has a permanent weak and hoarse voice, cannot breathe freely, and has lost lifting strength.

The trial court denied the motion to alter, amend or vacate, and the Walkers appealed to the Kentucky Court of Appeals. The Court of Appeals reversed and remanded. In doing so, the court concluded that "the evidence was sufficient to create a legitimate dispute about the need for an expert witness." This Court granted discretionary review.

## II. ANALYSIS.

As set forth in *Blankenship v. Collier,* 302 S.W.3d 665, 670 (Ky.2010):

Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care. *Perkins v. Hausladen,* 828 S.W.2d 652, 655–56 (Ky.1992). Expert testimony is not required, however, in *res ipsa loquitur* cases, where "the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it", and in cases where the defendant physician makes certain admissions that make his negligence apparent. *Id. (quoting Restatement (Second) of Torts,* Comment b, p. 157). Medical malpractice cases can therefore be divided into two categories: cases where the parties do not dispute the need for expert testimony, which encompass the vast majority of medical malpractice claims, and cases where the plaintiff disputes the need for expert testimony because he contends one of the narrow exceptions applies.

Kentucky courts have also been clear, however, that it is not appropriate for trial courts to use a summary judgment motion for punitive reasons to sanction parties for making untimely expert witness disclosures. *Ward v. Housman,* 809 S.W.2d 717, 719 (Ky.App.1991). However, when the motion is based on an actual failure of proof due to a complete lack of expert testimony, and not on a failure to meet a deadline due to an untimely disclosure, summary judgment can be appropriate.

Thus, even though an appellate court always reviews the substance of a trial court's summary judgment ruling *de novo, i.e.,* to determine whether the record reflects a genuine issue of material

fact, a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling. In a medical malpractice action, where a sufficient amount of time has expired and the plaintiff has still "failed to introduce evidence sufficient to establish the respective applicable standard of care," then the defendants are entitled to summary judgment as a matter of law. The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an abuse of discretion.

*Blankenship*, 302 S.W.3d at 668.

In this case, there was no specific expert disclosure deadline. Instead, the trial court set a trial date and ordered that all disclosures had to be made "sufficiently in advance" of the pretrial conference scheduled for September 29, 2010. Dr. Love moved for summary judgment arguing that the Walkers failed to identify any medical experts who would testify that Dr. Love's care of Lisa deviated from the standard of care. Like the plaintiff in *Blankenship*, the Walkers "never objected to the court-ordered expert disclosure deadline and never suggested, until [their] response to the motion for summary judgment, that [theirs] was the type of medical malpractice case that did not require expert testimony." 302 S.W.3d at 675. The Court of Appeals concluded that the evidence was sufficient to create a legitimate dispute about the need for an expert witness.

■ We disagree with the Court of Appeals and do not believe that there was a legitimate dispute about the need for an expert. This is not a *res ipsa loquitur* case where the jury could "reasonably infer both negligence and causation from the mere occurrence of the event and [Dr.

Love's] relation to it." *Id.* at 670. Moreover, Dr. Love did not make admissions that made his negligence apparent. *Id.* In this case, the jury would require the assistance of a medical expert witness to resolve whether a thyroidectomy was the appropriate action, and whether Dr. Love performed the surgery in a negligent manner leading to Lisa's injuries.

■ Although there was not any expert testimony that Dr. Love performed the surgery in a negligent manner at the time the summary judgment motion was filed, there was sufficient expert testimony to create a genuine issue of material fact as to whether the thyroidectomy was the appropriate action. As set forth above, there is a significant discrepancy between the diagnosis of Lisa as suffering from hypothyroidism prior to surgery and Dr. Love's diagnosis of thyroid storm. Specifically, Dr. Shah testified that Lisa was suffering from hypothyroidism and Dr. Love testified that Lisa was suffering from thyroid storm. If Dr. Love was correct that Lisa was suffering from thyroid storm, his decision to operate was questionable in light of Dr. Shah's and Dr. Dave's testimonies that the proper treatment for thyroid storm is not surgery but immediate hospitalization and consultation with an endocrinologist. Thus, based on the expert testimony of Dr. Shah and Dr. Dave, there was sufficient evidence to overcome summary judgment regarding the necessity for surgery.

■ However, if Lisa was suffering from hypothyroidism, the evidence indicates that surgery might have been appropriate. Thus, we must determine whether Lisa failed to timely present any expert testimony that Dr. Love's performance during or after the surgery did not meet the standard of care. We conclude that she did not.

In this case, discovery lingered for more than three-and-a-half years. During that time, the Walkers failed to name a medical expert or submit an expert opinion that Dr. Love's performance during or after the surgery did not meet the standard of care. Dr. Love filed a motion for summary judgment on July 12, 2010, and, on July 23, 2010, the Walkers filed a response to that motion, as well as a motion to reschedule the trial wherein they asked for an additional sixty days to list their experts. On September 14, 2010, almost sixty days from the date that the Walkers asked for additional time to list their experts, the trial court entered an order granting Dr. Love's motion for summary judgment. Thus, the Walkers essentially received the additional time that they requested, but they still failed to provide any expert testimony that Dr. Love's performance during or after the surgery did not meet the standard of care.

As set forth above, the trial court granted summary judgment to Dr. Love noting that the basis of the judgment was "due to failure of proof, not on failure to meet a deadline. Motion not premature." A trial court is granted wide latitude in managing its docket and discovery deadlines. Here, after more than three years for discovery, the trial court specifically found that Dr. Love's motion was not premature meaning that there had been a sufficient opportunity for discovery. Accordingly, the trial court was warranted in granting summary judgment in part based on the lack of proof that Dr. Love's performance during or after the surgery did not meet the standard of care. *See Blankenship*, 302 S.W.3d at 668.

 Although the Walkers timely moved to alter, amend or vacate the judgment, they failed to submit any affirmative evidence that Dr. Love's performance during or after the surgery did not meet the standard of care. Thereafter, they submitted Dr. Panje's unsworn letter on October 19, 2010, apparently pursuant to CR 60.02, in an attempt to be relieved from the judgment. "The decision to grant or deny a motion under CR 60.02 or CR 59.05 rests within the trial judge's sound discretion." *Copas v. Copas*, 359 S.W.3d 471, 475 (Ky.App.2012). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principals." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). Under the circumstances of this case, the trial court did not abuse its discretion. Dr. Panje's letter does not state that Dr. Love's performance during or after the surgery deviated from the standard of care. Therefore, the trial court did not err in denying the Walkers' motion to alter, amend, or vacate.

### III. CONCLUSION.

Because Lisa failed to timely present any expert testimony that Dr. Love's performance during or after the surgery did not meet the standard of care, summary judgment as to that issue was appropriate. However, summary judgment was not proper as to whether surgery was the appropriate response to Lisa's medical diagnosis. Therefore, on remand, the trial court should limit proof to issues regarding the propriety of surgery in this case. Accordingly, we affirm in part and reverse in part the decision of the Kentucky Court of Appeals.

All sitting. All concur.