RENDERED: NOVEMBER 2, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000181-DG

LAKE CUMBERLAND REGIONAL                                    APPELLANT
HOSPITAL, LLC

                           ON REVIEW FROM COURT OF APPEALS
V.                              CASE NO. 2013-CA-000983
                   PULASKI CIRCUIT COURT NO. 09-CI-01471

HELEN ADAMS                                                 APPELLEE

AND

2016-SC-000189-DG

SPRING VIEW HOSPITAL, LLC                                   APPELLANT

                           ON REVIEW FROM COURT OF APPEALS
V.              CASE NOS. 2014-CA-000600 & 2014-CA-000707
                     MARION CIRCUIT COURT NO. 10-CI-00208

KAREN JONES (NOW EPLEY)                                     APPELLEE

AND

2016-SC-000259-DG

SPRING VIEW HOSPITAL, LLC                                                APPELLANT

                    ON REVIEW FROM COURT OF APPEALS
V.               CASE NOS. 2013-CA-000842 & 2013-CA-000912
                    MARION CIRCUIT COURT NO. 10-CI-00011

JOYCE SPALDING (EXECUTRIX OF THE                              APPELLEES
ESTATE OF JOSEPH PAUL SPALDING,
DECEASED) AND JOYCE SPALDING

AND

                              2016-SC-000277-DG

JOYCE SPALDING (EXECUTRIX OF THE                              APPELLANTS
ESTATE OF JOSEPH PAUL SPALDING,
DECEASED) AND JOYCE SPALDING

                    ON REVIEW FROM COURT OF APPEALS
V.               CASE NOS. 2013-CA-000842 & 2013-CA-000912
                    MARION CIRCUIT COURT NO. 10-CI-00011

SPRING VIEW HOSPITAL, LLC                                                APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

This Court granted discretionary review to consider the issue of whether

patients have a cause of action against a hospital for the negligent

2

credentialing of a non-employee physician who is given staff privileges by the hospital. We consolidate these cases to determine whether Kentucky law recognizes the tort of negligent credentialing. For the following reasons, we reverse the Court of Appeals' recognition of negligent credentialing as a separate cause of action in the Commonwealth. We affirm the Court of Appeals' affirmance of summary judgment in the Spalding case and reinstate the order of the trial court. We remand the Adams and Jones cases to the respective trial courts for further proceedings.

## I. BACKGROUND.

### A. The Adams Case.

Lake Cumberland Regional Hospital (LCRH) is located in Somerset, Kentucky. In 2006, LCRH granted provisional medical staff privileges to Dr. Guy Sava. Prior to LCRH granting privileges to Dr. Sava in 2006, Dr. Sava practiced in Ohio, Saudi Arabia, and Minnesota, specializing in neurosurgery.

LCRH reviewed Dr. Sava's application for privileges which contained information relating to his prior history of chemical dependence and depression. The record shows Dr. Sava sought treatment in 2002, and no instances of substance abuse have occurred since his treatment. LCRH obtained peer recommendations related to Dr. Sava. Some physicians voiced reservations over Dr. Sava's professional judgment and patient management. LCRH granted Dr. Sava full active staff privileges in May 2007.

Helen Adams (Adams) sought treatment from Dr. Sava in September 2008 due to suffering from severe back and leg pain. Adams was diagnosed

3

with multiple spinal conditions, and Dr. Sava performed a spinal stabilization procedure on October 6, 2008. Dr. Sava was to insert hardware along both sides of Adams's spine; however, complications arose during surgery, and because Adams suffered from osteoporosis, the hardware could only be placed on one side of her spine. Adams also suffered from a torn dura, the layer covering the spinal cord.

Adams continued to report severe pain following surgery and fluid collected under the skin on her back. Dr. Sava performed a second procedure to repair a cerebrospinal fluid leak. Adams continued to complain of severe pain in her right leg, right foot numbness, and right foot drop.

Adams filed suit on October 5, 2009, alleging negligence against Dr. Sava, Dr. Sava's neurosurgery clinic, and LCRH. Adams asserted that due to Dr. Sava's history and the reservations from his former peers, LCRH was negligent "in extending privileges to [Dr. Sava], or in failing to suspend or terminate Dr. Sava's privileges prior to the injuries caused to [Adams]."

By agreed order, Adams dismissed her claims of negligence against LCRH based on treatment rendered by LCRH and based on theories of ostensible agency. LCRH moved the Pulaski Circuit Court for judgment on the pleadings on the only remaining claim, negligent credentialing. The trial court granted the motion finding that there is no recognized cause of action for negligent credentialing in Kentucky. Adams appealed.

4

## B. The Jones (now Epley) Case.

Spring View Hospital (Spring View) is located in Lebanon, Kentucky. Spring View is accredited by the Joint Commission on Accreditation of Hospitals requiring Spring View to draft and enforce bylaws outlining their credentialing process. Spring View's bylaws required that members of its active medical staff:

> Must be Board certified in the specialty for which they seek privileges, or have successfully completed a residency training program. . . in the specialty for which they are applying for privileges; or be board certified or board admissible by one of [several] specialty boards in the specialty for which the practitioner is applying for privileges. Members of the active staff must obtain Board Certification by a specialty recognized by the American Board of Medical Specialties within five (5) years of becoming eligible to sit for Board exams. This requirement will be considered at time of initial appointment and at each subsequent reappointment.

Dr. Daniel Bailey signed a Recruiting Agreement with Spring View in September 2006. The Recruiting Agreement required Dr. Bailey to be duly licensed as a physician in the State of Kentucky, and to obtain and maintain active medical staff privileges with Spring View. Dr. Bailey applied to join Spring View's medical staff in December 2006. In his application, Dr. Bailey disclosed his experience in orthopedic surgery in Texas and indicated he specialized in "orthopedics." However, Dr. Bailey left blank the section of the application requesting the names of specialty boards in which the physician was certified.

After the Kentucky Board of Medical Licensure granted Dr. Bailey his license to practice in Kentucky, Spring View granted Dr. Bailey

5

provisional medical staff privileges for one year. Dr. Bailey was granted active medical staff privileges in July 2008.

Karen Jones (Jones) injured her knee in 2005 and saw Dr. Bailey in August 2007. Dr. Bailey performed a right patellofemoral knee replacement surgery and a subsequent total right knee arthroplasty. After surgery, Jones experienced complications and began seeing another doctor, Dr. Sewell, in August 2009, when she became aware that Dr. Bailey's treatment may have caused her injury.

Jones filed suit for medical malpractice against Dr. Bailey on May 28, 2010, and in November 2012, amended her complaint to add Spring View, alleging that Spring View was negligent in granting Dr. Bailey staff credentials. Spring View moved for Summary Judgment based on Jones's claims being time barred. Spring View asserted that Jones knew, or should have known, of her claim against Spring View more than a year before Jones filed her Amended Complaint. The trial court denied the motion.

In January 2014, Spring View filed a motion to dismiss Jones's claim because Kentucky did not recognize the tort of negligent credentialing. The Marion Circuit Court agreed and granted Spring View's motion. Jones appealed. After Jones' negligent credentialing claim was dismissed, and notice of appeal was filed, Jones settled her claim with Dr. Bailey.

6

## C. The Spalding Case.

Joseph Spalding fractured his hip in January 2009, requiring surgery, which Dr. Bailey performed at Spring View. Following surgery, Dr. Bailey recommended that Mr. Spalding undergo a total replacement of his knee joint. This surgery occurred on April 22, 2009. Complications developed including failure of the knee prosthesis, severe infection, and necrosis. Additional surgeries were required and ultimately Mr. Spalding's leg had to be amputated above the knee.

The Spaldings filed suit against Dr. Bailey and Spring View in January 2010. The Spaldings claimed Spring View was negligent in granting Dr. Bailey active medical staff privileges due to his lack of qualification under the hospital's own bylaws and in failing to revoke Dr. Bailey's privileges in light of alleged prior negligent actions.

Dr. Bailey filed for bankruptcy and the Spaldings settled their claim with him, leaving their action for negligent credentialing against Spring View as the only remaining claim. Spring View moved for Summary Judgment and Judgment on the Pleadings based on the Spaldings' failure to assert a recognized cause of action under Kentucky law. The trial court granted Spring View's motions. The trial court also found that even if negligent credentialing was recognized, the Spaldings did not provide sufficient expert proof to present to the jury. The Spaldings appealed.

7

## D. Court of Appeals Decision.

The Court of Appeals consolidated the above cases for review. The Court of Appeals examined the law of other jurisdictions recognizing the tort of negligent credentialing and considered the respective policy arguments for, and against, such recognition. The Court ultimately recognized negligent credentialing as a cause of action by which individuals can hold hospitals liable for the negligent extension or renewal of staff privileges and credentials to independent contractor physicians. The Court of Appeals reversed and remanded the Adams case; reversed and remanded the Jones case, affirming the trial court's denial of Spring View's motion for summary judgment regarding its statute of limitations claims; and affirmed the trial court's grant of summary judgment in favor of Spring View in the Spalding case, agreeing with the trial court that plaintiffs had failed to present sufficient expert testimony. The hospitals and the Spaldings appealed. Additional facts are set forth below, as necessary.

## II. STANDARD OF REVIEW.

The plaintiffs' claims (Adams, Jones, and Spalding) were dismissed by the trial courts on summary judgment, motion for judgment on the pleadings, or motion to dismiss based on negligent credentialing not being a recognized cause of action in the Commonwealth. Appeals based upon questions of law, as here, are subject to *de novo* review, with no deference to the trial court's determination. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001).

8

## III. ANALYSIS.

### A. Policy.

The public policy of the Commonwealth is normally expressed through acts of the legislature, not through decisions by the courts. *Wehr Constructors, Inc. v. Assurance Co. of America*, 384 S.W.3d 680, 687 (Ky. 2012) (citing *Com. Ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 614 (Ky. 1992) (The establishment of public policy is granted to the legislature alone)).

In *Giuliani v. Guiler*, 951 S.W.2d 318 (Ky. 1997), the Court recognized a cause of action for loss of parental consortium by a child. "The legislature on its own had previously recognized the loss of consortium for a parent on the death of a child in Kentucky Revised Statute (KRS) 411.135." *Pearson ex rel. Trent v. National Feeding Systems, Inc.*, 90 S.W.3d 46, 52 (Ky. 2002). *Giuliani* does not place an affirmative duty on courts to act in the absence of the legislature to do so, but instead, stands for the proposition that it is not the sole province of the legislature to develop the common law. *Id.* "In the absence of a legislative decree, courts may adopt and apply public policy principles." *Giuliani*, 951 S.W.2d. at 321 (citing *Owens v. Clemons*, 408 S.W.2d 642 (Ky. 1966)).

For the reasons set forth below, this Court is not inclined to recognize the stand-alone tort of negligent credentialing, as this Court has not been persuaded by counsel of the need for a new cause of action, and the tort's far-reaching implications, as well as its impact on rural hospitals and communities in the Commonwealth, are unknown. The plaintiffs already have available the

9

means by which to bring their claims under common law principles of negligence, therefore, this Court need not create a new tort.

## B. Negligent Credentialing.

Negligent credentialing was first recognized in the Illinois decision of *Darling v. Charleston Cmty. Mem'l Hosp.*, 211 N.E. 2d 253 (Ill. 1965). Andrew R. deHoll, *Vital Surgery or Unnecessary Procedure? Rethinking the Propriety of Hospital Liability for Negligent Credentialing*, 60 S.C. L. Rev. 1127, 1138 (2009). "Broadly, negligent credentialing is a theory in which the recipient of a harmful service recovers from a gatekeeping entity for allowing the provider of that service to engage in the activities that caused the recipient harm." *Id.* at 1127 (citing Cf. *Elam v. Coll. Park Hosp.*, 183 Cal. Rptr. 156, 164 (Cal. Ct. App. 1982) (stating that hospitals are responsible for ensuring the competency of physicians who receive staff privileges)).

A *prima facie* case of negligent credentialing must establish proof that: (1) the hospital owed the patient a duty to insure a competent medical staff; (2) the hospital breached that duty by granting privileges to an incompetent or unqualified physician; and (3) the physician caused harm to the patient (the underlying medical malpractice claim must be proved). Peter Schmit, *Cause of Action for Negligent Credentialing*, 18 Causes of Action 2d 329 (2002). "To prevail, the plaintiff must show that the hospital negligently granted privileges to a physician *and* that the negligently credentialed physician was in fact negligent and caused harm to the plaintiff." *Id.* (emphasis in original).

10

Jurisdictions recognizing the tort apply peer review statutes and find that hospitals have a direct duty to grant and to continue staff privileges only to competent doctors while also having a duty to remove incompetent doctors. Sean Ryan, *Negligent Credentialing: A Cause of Action for Hospital Peer Review Decisions*, 59 How. L.J. 413, 422 (2016) (citing *Schelling v. Humphrey*, 916 N.E.2d 1029, 1033 (Ohio 2009)). Other states have recognized the tort by finding negligent credentialing inherent in, and the natural extension of, well-established common law rights. *Id.* at 424. (citing *Larson v. Wasemiller*, 738 N.W.2d 300, 306 (Minn. 2007)). Texas adopted negligent credentialing, with heavy restrictions, and only allowing the tort in cases where the plaintiff can show the grant of privileges was made with malicious intent. *Id.* (citing Tex. Health & Safety Code Ann. § 161.033 (West 2015)).

By the same token, jurisdictions that reject claims of negligent credentialing also do so based on immunity granted in peer review statutes and in the federal Healthcare Quality Improvement Act. *Id.* at 426-27. The Arkansas Supreme Court held that the state's peer review statute affords immunity as long as the hospital peer review committee acts without fraud or malice. *Id.* at 428. Arkansas further rejected the tort for two reasons.

> First the court concluded that negligent credentialing conflicted with the state's medical malpractice act because the hospital's credentialing decision was not a "medical injury." Since the hospital was not directly involved with the doctor's decision to perform plaintiff's surgery, the hospital was not liable for a "medical injury" under the medical malpractice act. Second, the court rejected the argument that negligent credentialing was simply an extension of common law negligent hiring or negligent

11

supervision because Arkansas' Peer Review Statute already provided for review of physician competency.

*Id.* (citing *Paulino v. QHG of Springdale, Inc.*, 389 S.W.3d 462 (Ark. 2012)).

## C. Avenues of Recovery.

Medical malpractice is but a specific branch of the common law tort of negligence. "In medical malpractice cases[,] the plaintiff must prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death." *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982) (citing *Blair v. Eblen*, 461 S.W.2d 370 (Ky. 1970)). Claims of negligence, or medical malpractice, against hospitals are not new causes of action. For example, plaintiffs are free to bring negligence claims against hospitals for Methicillin Resistant Staphylococcus Aureus (MRSA) infections; premises liability issues; and for the hospital's negligence in selecting its staff. *See, Stallins v. Hinton*, 2015 WL 5316700 (Ky. App. September 11, 2015); *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901 (Ky. 2013); *Illinois Cent. R. Co. v. Buchanan*, 103 S.W. 272 (Ky. 1907).

The structure in which hospitals are now operating has changed and this change has encouraged the push to recognize a specific cause of action - - negligent credentialing. Traditionally, hospitals were charitable organizations, non-profit, and recipients of state funding. Now, however, hospitals are becoming increasingly private, for profit, and corporate in nature. Hospitals

12

are moving away from traditional physician employees and instead are granting hospital privileges to independent contractor physicians.

What has remained constant is that hospitals are required to exercise ordinary care. *See, Humana of Kentucky, Inc. v. McKee*, 834 S.W.2d 711, 722 (Ky. App. 1992). Hospitals have a duty to make sure patients receive a medically acceptable standard of care, and this duty extends to making sure qualified staff are providing the appropriate medical care. *See, Illinois Cent. R. Co. v. Buchanan*, 103 S.W. 272, 274 (Ky. 1907). The hospital can certainly be liable for its own negligence, separate and distinct from any negligence on the part of a physician - - even a non-employee physician.

In *Illinois Cent. R. Co. v. Buchanan*, the railroad established a hospital to which it sent its sick, disabled, and injured employees. An employee brought an action on the grounds that surgeons and attendants at the hospital were incompetent and unskilled. The Court held:

> "All of these persons are appointed by the railroad company; and, although the railroad company is not liable in damages for the negligence and carelessness or unskillfulness of any of its surgeons, physicians, or attendants in charge in their treatment and care of the employees received into the hospital, yet it is obliged to exercise reasonable care in the selection of the persons who have charge of the patients; and, if it fails to select skillful and competent surgeons, physicians, and attendants, it may be required to respond in damages to any employee who has been injured by such incompetent or unskillful physicians, surgeons, or attendants."

*Id.* at 273. "In the employment by a railroad company of its surgeons to attend to persons injured by its trains, the relation of master and servant, principal

13

and agent, does not exist. And, if the railroad company is careful and selects suitable surgeons, it is not responsible for their neglect or malpractice." *Id.*

It is clear that the duty on hospitals to employ competent staff has existed in the Commonwealth at least since the beginning of the twentieth century. There is no need for this Court to establish a new tort specifically applying to hospitals. Like many negligence actions, a claim of negligence against a hospital for the selection of its physicians is derivative of the medical malpractice claim against the physician.[1] Without proof that the doctor committed malpractice, the plaintiff will be unable to prove causation in the negligence action against the hospital. This is consistent with liability being imputed to a principal in vicarious liability actions, *Branham v. Rock*, 449 S.W.3d 741, 752 (Ky. 2014) (citing *Cohen v. Alliant Enterprises, Inc.*, 60 S.W.3d 536, 539 (Ky. 2001)[2], as well as with the bifurcated trial practice in the jurisdictions that expressly recognize negligent credentialing as a separate tort. Kyle Deskus, *Health Law - - Band-Aid Jurisprudence: Why the Recognition of Negligent Credentialing Threatens Patient Care in Massachusetts*, 37 W. New Eng. L. Rev. 27, 36 (2015) (citing *Schelling v. Humphrey*, 916 N.E.2d 1029, 1035-36 (Ohio 2009)).[3]

---

[1] When we say the case against a hospital is derivative, we mean that the plaintiff will have to prove the underlying harm, often against a negligent physician, which will often require litigation of a case within a case. However, we can envision a scenario where a negligence action against a hospital would not be derivative of an action against a physician or employee.

[2] "[I]f the agent did not act negligently, there can be no vicarious liability imputed to the principal."

[3] In *Schelling*, the Ohio Supreme Court explained that bifurcation would be beneficial because it "avoids the problem of jury confusion or prejudice . . . [and] also allows a negligent

14

Because the Court finds a new cause of action is not necessary for the plaintiffs' claims, we must now examine whether the plaintiffs' claims should have been dismissed by the trial court on other grounds.

## 1. Helen Adams.

The trial court granted LCRH's motion for judgment on the pleadings finding that Adams's claim of negligent credentialing was not a recognized cause of action. No other grounds gave rise to the Pulaski Circuit Court's dismissal of Adams's claims, and therefore, the court erred. For that reason, we remand the matter to that court for further proceedings consistent with this opinion.

## 2. Karen Jones (now Epley).

Spring View sought summary judgment on additional grounds that Jones filed her claim against Spring View more than two years after filing her claim against Dr. Bailey, thus, her claim was time-barred under the statute of limitations. The Marion Circuit Court denied Spring View's motion and the Court of Appeals affirmed.

An action against a hospital for negligence or malpractice shall be brought within one year after the cause of action accrued. KRS 413.140(1)(e). The discovery rule is a means by which to identify when a cause of action accrues and the statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have

credentialing claim against a hospital to be dismissed if the plaintiff does not prevail" in the initial malpractice action.

15

been discovered. *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709, 712 (Ky. 2000).

It is important to note the distinction between injury and harm. "Harm in the context of medical malpractice might be the loss of health following medical treatment. Injury, on the other hand, is defined as 'the invasion of any legally protected interest of another'." *Wiseman*, 37 S.W.3d at 712. The injury in the medical malpractice context refers to the actual wrongdoing, or the malpractice itself. *Id.* "Under the discovery rule, it is the date of the actual or constructive knowledge of the injury which triggers the running of the statute of limitations." *Id.* (citing *Hall v. Musgrave*, 517 F.2d 1163, 1168 (6th Cir. 1975)(Celebrezze, J., dissenting)).

This distinction is important because it underscores the fact that Jones's claim against Spring View did not necessarily accrue at the same time as her claim against Dr. Bailey. Spring View argues that Jones's claim accrued on August 3, 2009, when Jones learned from another doctor, Dr. Sewall, that other patients had complaints about Dr. Bailey. This argument is flawed because it conflates the facts which might have given rise to Jones's claim against Dr. Bailey with those that would have given rise to her claim against Spring View. The same applies to Spring View's next contention that Jones's claim accrued in 2010 when Jones read about the Spaldings' claims in the local newspaper.

Spring View additionally argues that Jones's claim is barred because Jones's lawyer had knowledge about possible fault on the part of Spring View

16

and such knowledge would be imputed to Jones. Jones and the Spaldings were both represented by the same attorney. The Spaldings filed their claims against Dr. Bailey and Spring View prior to Jones filing her claims.

> The general rule that an attorney's knowledge may be imputed to his or her client is subject to a number of exceptions. Accordingly, knowledge which an attorney obtained in transactions independent of his or her representation of the client is not imputed to the client, and a client is not affected with notice because of knowledge obtained by the attorney from outside sources and not in the course of his or her employment, as, for example, where the knowledge is acquired by the attorney in the performance of professional services for another. Nor is the client affected by knowledge acquired, or notice received, by the attorney before the commencement of the attorney-client relationship.

*3M Co. v. Engle*, 328 S.W.3d 184, 189, fn. 26 (Ky. 2010).

Jones maintains that she did not become aware of a possible claim against Spring View until 2012, when Spring View responded to discovery in the Spalding case admitting that Dr. Bailey did not meet the requirements of Spring View's bylaws. The Court of Appeals held that Jones was not clearly on notice of her cause of action against Spring View before March 30, 2012, and these circumstances at least raise genuine issues of material fact, inappropriate for granting a summary judgment motion. On this issue, the Court agrees with the Court of Appeals. Jones's claim clearly falls into the exception discussed in the *Engle* footnote above. The knowledge of Jones's attorney cannot be imputed to her because any such knowledge was acquired by the attorney in providing services for another client. Summary judgment is inappropriate as to this issue. Because we affirm the trial court's denial of summary judgment for Spring View based on the statute of limitations, and

17

because we find that Jones can proceed with her action against Spring View, we remand Jones's case to the Marion Circuit Court for further proceedings consistent with this opinion.

### 3. Joseph and Joyce Spalding.

#### a. Settlement.

The Spaldings filed suit against Dr. Bailey and Spring View on January 11, 2010. On October 14, 2011, Dr. Bailey filed for Chapter 7 bankruptcy and the Spaldings agreed to dismiss their claim against Dr. Bailey by agreed order entered January 4, 2013. There was no stipulation to liability or fault in the agreed order as to Dr. Bailey.

Spring View contended at the trial court that, because Dr. Bailey was dismissed from the case without any establishment of fault on his part, Spring View would be prejudiced by having to defend Dr. Bailey in the negligent credentialing trial. The trial court was not sympathetic to Spring View's arguments, and neither is this Court. We adopt the reasoning of the Marion Circuit Court that settlement with the doctor without an admission of fault is not a bar to prosecuting the claim against the hospital. As the trial court noted, KRS 411.182(4) addresses the procedure when one defendant settles in a tort case. The case against the remaining defendants proceeds as usual.[4] This is not a case where the dismissal of an agent also relieves the master of

---

[4] KRS 411.182(4) states: A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.

liability. This is so because the Spaldings' claim against the hospital arises from the hospital's own alleged negligence.

### b. Circular Indemnification.

When Dr. Bailey filed for Chapter 7 bankruptcy, Joseph and Joyce Spalding, and Spring View, were named as creditors. The Spaldings subsequently entered into a Release and Settlement of Claims (Settlement) with Dr. Bailey. Pertinent parts of the Settlement state:

> Although it appears that any claim of indemnity by any person or party, including the potential claim of indemnity of Spring View Hospital, LLC, is now barred and the commencement of any such action enjoined by 11 U.S.C. § 524, to the extent of the personal liability of Daniel E. Bailey, Jr., M.D., and resultant exposure of The Medical Protective Company, if any, and only to such extent, Joseph Spalding and Joyce Spalding, further agree to indemnify, defend, and hold harmless the Released Parties, from any and all claims, suits, third party claims, cross-claims, claims for indemnity or contribution, or any other actions, causes of action, known or unknown, presently or at any future time made against the Released Parties by any person, entity, insurance company, corporation, agency, governmental agency, hospital or organization, including but not limited to Spring View Hospital LLC, arising out of or in connection with the above-mentioned alleged incident and lawsuit.
> The terms recited herein should not be construed to release any claims that Joseph Spalding and Joyce Spalding may have against any other potentially liable party, including, but not limited to, Spring View Hospital LLC, and it is the intent of the parties that said claims are expressly reserved. Furthermore, any payments made in accordance with the terms of this Settlement will serve as only partial satisfaction of the injuries sustained by Joseph Spalding and Joyce Spalding, and this agreement should not be construed to cause a forfeiture of the right of Joseph Spalding and Joyce Spalding to seek full satisfaction of said injuries from any other potentially liable party, including, but not limited to, Spring View Hospital LLC.

Spring View argued that the Spaldings' indemnification of Dr. Bailey in the Settlement would preclude any claim or award against Spring View under

19

the circular indemnity argument established in *Crime Fighters Patrol v. Hines*, 740 S.W.2d 936 (Ky. 1987). The present case differs from *Hines*. Any claim of indemnity Spring View possessed was extinguished when the Bankruptcy Court entered an order extinguishing all debts, actual or potential, against Dr. Bailey. "Creditors of the debtors are parties to a bankruptcy proceeding." *Cadle Company v. Gasbusters Production I Limited Partnership*, 509 S.W.3d 713, 719 (Ky. App. 2016) (citing *Sanders Confectionery Prods., Inc., v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992)). Spring View made no attempt to except its potential indemnity claim from discharge in the bankruptcy proceeding. Therefore, we find that any claim of indemnity held on behalf of Spring View was terminated with the remainder of Dr. Bailey's debt in the January 18, 2012 Order from the Bankruptcy Court.

### c. Expert Witness.

In granting Spring View's motion for summary judgment, the Marion Circuit Court based its decision, in part, on its review of the deposition testimony of Kathy Matzka, the Spaldings' expert. The trial court found that Ms. Matzka's testimony was insufficient to establish a jury question regarding the hospital's violation of the standard of care. The trial court stated that if it were to adopt Ms. Matzka's reasoning, that hospitals create a higher standard of liability when the hospital establishes a higher standard for credentialing, it would discourage hospitals from setting higher standards. Although not stated in its order, it appears that the trial court also found that Ms. Matzka was not qualified as an expert. The issue of qualification is not before this Court, so we

20

need not address it; however, because we agree that Ms. Matzka's testimony stated an erroneous standard of care, we affirm the trial court's finding that the testimony could not be presented to the jury.

"Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Love v. Walker*, 423 S.W.3d 751, 756 (Ky. 2014) (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992)). The trial court cited *Rogers v. Kasdan* in its order granting Spring View's summary judgment motion, again, focusing on the idea that the hospital's established policies do not heighten the standard of care. We agree with the trial court that Spring View's bylaws do not create a higher standard of care or otherwise alter its liability.

In *Rogers*, the trial court instructed the jury on the duty "to exercise that degree of care ordinarily used by hospitals under circumstances like or similar to those shown in this case." 612 S.W.2d 133, 135 (Ky. 1981). The trial court went on to add additional duties relating to the hospital maintaining appropriate procedures. *Id.* at 135-36. The Court found these additional duties and instructions to be in error because they failed to meet the bare bones instruction test. *Id.* at 136. "Whether the hospital hired knowledgeable nurses, or had proper supervision for staff physicians, or accurate record keeping, and so forth, were all evidently questions for the jury to consider. While they constituted criteria the jury might use to decide the question of

21

ordinary care, listing them in this manner was not necessary to pose the issue of the hospital's duty." *Id.*

> It is our conclusion that the jury should be instructed that the defendant was under a duty to use that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances. Under the standard just expressed, the evidence may include the elements of locality, availability of facilities, specialization or general practice, proximity of specialists and special facilities as well as other relevant considerations.

*Blair v. Eblen*, 461 S.W.2d 370, 373 (Ky. 1970).

Ms. Matzka's testimony regarding the hospitals bylaws and procedures does not create an entitlement to a specific jury instruction on the duty to follow those bylaws and procedures, and because this Court declines to recognize a new cause of action or a new express duty relating to hospitals, the instruction remains that as outlined above in *Blair*. In examining Ms. Matzka's deposition testimony, the Court notes that Ms. Matzka did not accurately testify as to the standard of care for a hospital in medical negligence cases.

> Q. Do you know - - did they require - - did that hospital require board certification?
> A. No.
> Q. Okay. Do you know why?
> A. Because it's not required by accreditation standards or regulatory requirements. Some hospital medical staffs just in their hospitals decide they want to set the bar higher.[5] . . .
> Q. Well, one thing I forgot to ask you about, these medical staff bylaws, I mean, any hospital can put things, hospital and its medical staff, in bylaws that are above and beyond the standard of care, correct?
> A. That's correct.

---

[5] Kathy Matzka Deposition, page 40.

Q. All right. So - - and you understand what you're giving opinions on are the standard of care, not something that's the highest bar, correct?

A. Well, that's true, but I feel that the bylaws, the rules and regulations, credentialing processes that a hospital puts in place or a medical staff puts in place for itself do set the standard of care for that facility.

If you set the bar high, then you should - - you do it for a reason.

Q. Right.

But the standard of care is what a reasonably competent hospital would do under same or similar circumstances.

Do you understand that to be the standard of care or something different?

A. Well, I understand that to be the reasonableness standard, but I feel if somebody sets the bar higher that they should meet their own requirements.

I feel that it's a standard of care throughout hospitals when they require something in their bylaws.[6]

The standard of care a hospital owes to a patient is that standard expected of a reasonably competent hospital, acting in the same or similar circumstances. Ms. Matzka's testimony was certainly evidence the jury could weigh in determining if Spring View exercised its duty of care, but Spring View's bylaws do not, in and of themselves, establish the standard of care. Because Ms. Matzka's testimony attempted to define what the legal standard of care was, and because that asserted standard was erroneous, the trial court was correct in granting summary judgment to Spring View.

Therefore, the Court affirms the opinion of the Court of Appeals upholding the trial court's grant of summary judgment against the Spaldings because Ms. Matzka failed to provide sufficient expert testimony related to Spring View's standard of care and breach thereof.

---

[6] Kathy Matzka Deposition, pages 64-65.

## D. Future Guidance.

Because we remand the Adams and Jones cases to the trial courts, we feel it necessary to provide guidance for further proceedings that will occur in these cases, and others that follow.

We reiterate that we are not recognizing a new tort of negligent credentialing. We also reiterate that plaintiffs already have a means by which to recover against a hospital for allowing incompetent physicians to provide medical care. That means is the common law tort theory of negligence. Hospitals are neither shielded from liability nor does the change in hospital management demand creation of a new cause of action, specifically applying to hospitals in the credentialing of physicians.

The standard of care remains the objective, reasonable person (hospital) standard. Just like in a medical malpractice case, where plaintiff must present expert testimony regarding the standard of care and the breach thereof, the plaintiff carries the same burden in a negligence action against a hospital. As stated above, an action alleging the hospital's own negligence in credentialing physicians is derivative from the negligence of the physician. Procedurally, if a claim against a physician is dismissed, leaving only the claim against the hospital, the plaintiff still has to present evidence of the doctor's negligence in order to prove causation in his or her case against the hospital. If a claim against the physician is not dismissed, best practice involves bifurcating the trials. Bifurcation allows for clear presentation of the issues to the jury as well as responsible use of judicial resources. If the plaintiff does not prevail in the

24

malpractice action against the physician, a subsequent trial against the hospital is neither necessary nor warranted.

We recognize that trial courts are entrusted with the overwhelming tasks of deciphering factual and procedural issues, which are often magnified in complex tort cases. In trying to make sense of the case before it, trial courts must be careful to remain astute to the underlying issues. The plaintiffs herein urged consideration of a novel cause that, in reality, is not novel at all.

## IV. CONCLUSION.

For the foregoing reasons, this Court declines to recognize a new tort of negligent credentialing in the Commonwealth. To that extent the Court of Appeals' decision is reversed. However, because plaintiffs Adams and Jones still have viable causes of action under common law negligence, we remand those cases to the respective trial courts for further proceedings. We affirm the Court of Appeals' decision upholding summary judgment in the Spaldings' case, and the order of dismissal in that trial court is reinstated.

Minton, C.J.; Cunningham, Hughes, Keller, VanMeter and Wright, JJ., concur. Venters, J., not sitting.

COUNSEL FOR LAKE CUMBERLAND REGIONAL HOSPITAL, LLC AND SPRING VIEW HOSPITAL, LLC:

Brian Todd Thompson
Millicent Ann Tanner
Eleanor M.B. Davis
Chad Owens Propst
Joseph Wright
Thompson Miller & Simpson PLC


COUNSEL FOR APPELLEES/APPELLANTS: JOYCE SPALDING AND JOSEPH SPALDING (JOYCE SPALDING AS EXECUTRIX OF THE ESTATE OF JOSEPH PAUL SPALDING):

Joseph Hubert Mattingly III
Kaelin Goheen Reed
John Elder, IV
Mattingly & Nally-Martin, PLLC

COUNSEL FOR APPELLEE, KAREN JONES (NOW EPLEY):

Joseph Hubert Mattingly III
Kaelin Goheen Reed
John Elder, IV
Mattingly & Nally-Martin, PLLC

Kandice D. Engle-Gray


COUNSEL FOR APPELLEE, HELEN ADAMS:

Stephen M. O'Brien, III
David Coomer
Adam J. Stigall
Stephen M. O'Brien, III, PLLC


COUNSEL FOR AMICUS CURIAE, KENTUCKY HOSPITAL ASSOCIATION:

Wesley Reed Butler
Benjamin M. Fiechter
Kimberly Goetz DeSimone
Barnett Benvenuti & Butler PLLC

26

COUNSEL FOR AMICUS CURIAE, KENTUCKY JUSTICE ASSOCIATION:

Paul A. Casi, II
Jeffrey Wayne Adamson
Paul Casi, III
Paul A. Casi, II, P.S.C.

Kevin Crosby Burke
Burke Neal PLLC

COUNSEL FOR AMICUS CURIAE, KENTUCKY MEDICAL ASSOCIATION:

Sarah Spurlock
Charles J. Cronan IV
Bethany A. Breetz
Stites & Harbison PLLC