RENDERED: JULY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0329-MR

JAMES BRUCE CARDWELL AND
LORA MARIE CARDWELL                                        APPELLANTS

v.
APPEAL FROM WHITLEY CIRCUIT COURT
HONORABLE DANIEL BALLOU, JUDGE
ACTION NO. 23-CI-00110

TIMOTHY D. WOODCOCK AND
ABBIE JONES CONSULTING, PSC.                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND MᴄNEILL, JUDGES.

LAMBERT, JUDGE:  James Bruce Cardwell and Lora Marie Cardwell (the Cardwells) have appealed from the March 4, 2024, order of the Whitley Circuit Court granting summary judgment to Timothy D. Woodcock and Abbie Jones Consulting, PSC (AJC or, collectively, the AJC defendants) related to a property survey.  We affirm.

Because there has been no discovery in the case, we shall summarize the relevant facts as they are set forth in the various filings. In October 2016, the Cardwells purchased real property at 3747 River Road in Williamsburg, Kentucky. This property is bordered by a tract of more than 500 acres that was transferred by Joe Patrick and his wife to James and Victoria Marsee in January 1977. We shall refer to this as the Joe Patrick Farm or the Marsee property. In December 2022, the Marsees retained AJC and Woodcock, a licensed professional Kentucky land surveyor employed by AJC, to perform a partial boundary survey of the property line between their property and property owned by Edgar Meadors (not the Cardwells' property). In February 2023, Woodcock delivered the completed survey to James Marsee and recorded what the Cardwells described as a retracement survey of the Joe Patrick Farm and indicated that the acreage totaled 551.38 acres. The plat is entitled as a "Partial Boundary Exhibit of the James A. and Victoria A. Marsee Property." This plat indicated that there was a public road that ran through the Cardwells' property, which was identified as a boundary for the Marsee property, and that it encumbered a portion of the Cardwells' property. The Cardwells stated that both of these contentions were false.

The Cardwells filed the present lawsuit on February 27, 2023, two weeks after the plat was recorded, naming the Marsees and their heirs (the Marsee

defendants), Woodcock, AJC, and Whitley County[1] as defendants. The Cardwells sought to quiet title to their real property, a direction that the county clerk strike the plat in question, a declaration that there was no public road on their real property, and a claim for slander of title. Specifically as to the AJC defendants, the Cardwells sought damages for slander of title and professional land surveyor malpractice.

In July 2023, the Cardwells moved the court for a default judgment, stating that all of the defendants had been served with process, but none had filed a responsive pleading to their complaint. They acknowledged that they had agreed to not file a motion for default judgment pending a settlement of the case, but it had become clear that the defendants were not going to put together an acceptable settlement package. The Marsee defendants moved for leave to file a belated answer, noting that they had been attempting to settle the matter. In an order entered August 7, 2023, the court denied the motion for default judgment, granted the Marsee defendants' motion to file a belated answer, and granted all defendants 30 days to answer the Cardwells' complaint.

---

[1] The Cardwells named Whitley County as a defendant as it might be claiming an interest in unpaid *ad valorem* taxes due on the subject matter of the lawsuit. Along with its answer, Whitley County filed a counterclaim and a cross-claim seeking a lien against the subject property for taxes for the year 2023 and all subsequent years. The Cardwells filed an answer, admitting the allegations in the counterclaim and cross-claim, including the priority of the lien.

The AJC defendants filed their answer on August 24, 2023, generally denying the Cardwells' allegations and specifically asserting that their claims were barred due to a lack of privity of contract and that they had not acted negligently. The Cardwells filed a renewed motion for default judgment against the Marsee defendants in September, following the expiration of the 30-day period the court permitted in its order.

Rather than ruling on the renewed motion for a default judgment, the circuit court entered an order on October 23, 2023, directing the parties to mediate the matter. On December 9, 2023, the Cardwells filed a motion to abrogate the mediation requirement between them and the AJC defendants, stating that counsel for those defendants had indicated that they would only settle for a trivial amount and that they did not want to engage in mediation. The motion was noticed to be heard on February 5, 2024. On February 8, 2024, the court entered an order denying the motion, noting that the AJC defendants had advised the court that they intended to file a motion for summary judgment and that the mediator had died.

On February 8, 2024, three days after the hearing and the same day the order was entered, the AJC defendants filed a motion for summary judgment on the Cardwells' claims against them for slander of title and professional negligence, supported by Woodcock's attached affidavit. They argued that there were no disputed issues of material fact to be decided and that they were entitled to

-4-

a judgment as a matter of law. In the memorandum in support of the motion, the AJC defendants stated that they had not been hired to survey the property line between the Marsees' property and the Cardwells' property and that the survey delivered to James Marsee in February 2023 stated that the only portion of it that met the requirements of 201 Kentucky Administrative Regulations (KAR) 18:150 § 12 was the portion in the "revision cloud." Therefore, the Cardwells' property was not legally impacted by the partial boundary survey.

In response, and supported by James Cardwell's affidavit, the Cardwells argued that summary judgment was premature. No discovery had been taken, no facts had been developed, and no experts had been hired (in order to keep costs down). They went on to dispute the AJC defendants' legal arguments. In the affidavit, Cardwell stated that James Marsee used the survey to assert that the Cardwells were claiming land that the Marsees owned, leading the Cardwells to have their land surveyed and the boundary line remarked.

In their reply, the AJC defendants addressed, among other issues, the Cardwells' failure to retain an expert for their professional negligence claim.

By order[2] entered March 4, 2024, the court granted the motion for summary judgment, without including any legal reasoning, and made the order final and appealable. This appeal now follows.

_____

[2] The circuit court used the proposed order submitted by the AJC defendants.

On appeal, the Cardwells assert that they did not have sufficient time to conduct discovery, that there were multiple genuine issues of material fact that precluded the entry of summary judgment, and that the AJC defendants were not entitled to a judgment on either of their claims against them. The AJC defendants contend that the Cardwells' claims arise from James Marsee's misuse of the partial boundary survey and that they are not responsible for that misuse.

Our review of an order granting summary judgment is as follows:

> Summary judgment is to be cautiously applied and should not be used as a substitute for trial. Granting a motion for summary judgment is an extraordinary remedy and should only be used to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant. The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists. This review requires the facts be viewed in the light most favorable to the party opposing summary judgment. . . . Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So we operate under a de novo standard of review with no need to defer to the trial court's decision.

*Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (internal quotation marks and footnotes omitted).

We shall first consider whether the Cardwells had sufficient time to conduct discovery.

-6-

The standards governing summary judgment practice are set forth in Kentucky Rules of Civil Procedure (CR) 56. "A party against whom a claim . . . is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." CR 56.02. And a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03.

While CR 56.02 makes it clear that a summary judgment motion may be filed at any time, such motions may not be filed prematurely:

> Although a defendant is permitted to move for a summary judgment at any time, this Court has cautioned trial courts not to take up these motions prematurely and to consider summary judgment motions "only after the opposing party has been given ample opportunity to complete discovery." Thus, even though an appellate court always reviews the substance of a trial court's summary judgment ruling *de novo*, *i.e.*, to determine whether the record reflects a genuine issue of material fact, a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling.

*Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010) (citation omitted). "The trial court's determination that a sufficient amount of time has passed and that it can properly take up the summary judgment motion for a ruling is reviewed for an

abuse of discretion." *Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

In the present case, the Cardwells argue that the filing of the summary judgment motion three days after the hearing on the motion to abrogate mediation, and the entry of the order granting summary judgment the following month, was fundamentally unfair as they did not have time to conduct discovery. The AJC defendants argue that the three-day discovery argument is a red herring and that the Cardwells had more than a year to conduct discovery.

Our review of the record confirms that the Cardwells filed their complaint in February 2023 and that the AJC defendants did not file the motion for summary judgment until February 2024, which was granted a month later. However, what transpired in the intervening year was several months of delay before any answer was filed (only the AJC defendants have filed an answer; it does not appear that the Marsee defendants have filed one), the filing of motions for a default judgment, and an order for mandatory mediation that was apparently withdrawn at the same time the motion for summary judgment was filed. There was essentially no time to conduct discovery due to the delays in the defendants' filing their respective answers (if filed at all) and the mandatory mediation order.

-8-

Therefore, the Cardwells have not been afforded sufficient time to conduct discovery, and the trial court appears to have abused its discretion in ruling on the motion for summary judgment.

However, we must also consider whether the Cardwells pled facts that, if borne out by proper discovery, would entitle them to relief, and whether their claims fail as a matter of law.

As the AJC defendants point out, the Cardwells must establish that they were negligent. "The basic elements of a negligence claim are: 'duty, breach, causation, damages.'" *Phelps v. Bluegrass Hospitality Mgmt., LLC*, 630 S.W.3d 623, 628 (Ky. 2021) (quoting *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015)). "The determination of whether a duty exists is a legal question for the court." *Shelton*, 413 S.W.3d at 908. "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Tr. Co., Inc.*, 724 S.W.2d 228, 229 (Ky. App. 1986). "[I]n order to determine whether a duty existed in a particular situation, the examination must be focused so as to determine whether a duty is owed with consideration being given to public policy and statutory and common law theories." *James v. Wilson*, 95 S.W.3d 875, 893 (Ky. App. 2002) (citing *Fryman v. Harrison*, 896 S.W.2d 908, 909 (Ky. 1995)). In addition, the AJC defendants assert that in Kentucky, the courts refuse recovery in tort for the loss of purely

economic damages to parties that lack privity of contract with a negligent professional. *See Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 739 (Ky. 2011).

There is no question that the Cardwells did not have a contract with the AJC defendants, as the Marsees were the ones who contracted with them to conduct the survey. And we reject the Cardwells' arguments that such duty exists under § 552 of the *Restatement (Second) of Torts* (discussing information negligently supplied for the guidance of others) or 201 KAR 18:142 (the code of professional practice and conduct for land surveyors).

The first claim we shall address is the claim for professional land surveyor malpractice and whether any disputed issues of material fact remain to be decided. Pursuant to 201 KAR 18:150 § 3(2),

> A professional land surveyor shall not represent that:
>
> (a) A boundary survey determines land ownership; or
>
> (b) A boundary survey provides more than evidence of rights in land; or
>
> (c) Land ownership can be established by any survey.

"Failure to comply with this administrative regulation shall constitute misconduct, gross negligence, incompetence, or a combination of these violations in the practice of professional land surveying." 201 KAR 18:150 § 3(1).

We agree with the AJC defendants that the Cardwells have presented no evidence of such a violation. Rather, it appears that the Cardwells' claims arise from James Marsee's misinterpretation of the partial boundary survey, not from actions of the AJC defendants, who did not know that James Marsee would use the survey in the manner that he did. Furthermore, the Cardwells have not pled any facts that the AJC defendants fell below the standards set forth in 201 KAR 18:150 §§ 6 (addressing field work) or 12 (addressing partial boundary surveys). The Cardwells' property interests were not adversely affected by the partial survey, as the only area of significance was between the Marsees' and the Meadors' properties. We agree with the AJC defendants that they are entitled to a judgment on this claim as a matter of law.

We shall next consider the Cardwells' claim for slander of title. *Restatement (Second) of Torts* § 624 (1977) addresses slander of title and provides:

> The rules on liability for the publication of an injurious falsehood stated in § 623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.

*See Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 235-36 (Ky. 2013), for more discussion of § 624.

> In order to maintain a slander of title action in this jurisdiction, the plaintiff must plead and prove that the

> defendant has knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property; he must also plead and prove that he has incurred special damage as a result. . . . The special damage required may consist of either a loss by the plaintiff of a sale of his property or a diminution in its fair market value.

*Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 766-67 (Ky. App. 1980) (citations omitted).

We agree with the AJC defendants that the Cardwells have failed to plead any facts that they (the AJC defendants) should have known that portions of the survey they were not contracted to perform would be used against the Cardwells. Again, the partial boundary survey had no legal effect on the Cardwells' property and the AJC defendants could not have foreseen that James Marsee would use the survey the way he did. Accordingly, we hold that the AJC defendants are entitled to a judgment as a matter of law. The circuit court did not commit any error in granting summary judgment in their favor.

Because we have concluded that the Cardwells' claims fail as a matter of law and that the circuit court properly granted summary judgment, the circuit court did not abuse its discretion in not allowing them to conduct discovery.

For the foregoing reasons, the judgment of the Whitley Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:    BRIEF FOR APPELLEES:

James H. Wren, II    B. Scott Jones
Williamsburg, Kentucky    Louisville, Kentucky